Jane DOE, Lynn Goldman, Philadelphia Welfare Rights Organization, Exzeal Palmer, John Franklin, M.D., Francis Hutchins, Jr., M.D., Planned Parenthood Association of Southeastern Pennsylvania, Inc., Elizabeth Blackwell Health Center for Women, and Women Organized Against Rape

v.

Helen O'BANNON, individually and as Secretary of the Department of Public Welfare of the Commonwealth of Pennsylvania, Gerald Radke, individually and as Commissioner of Medical Programs of the Commonwealth of Pennsylvania, and Don Jose Stovall, individually and as Executive Director of the Philadelphia County Board of Assistance.

Civ. A. No. 81–0555.

United States District Court,
E. D. Pennsylvania.

July 10, 1981.

---

Kathryn Kolbert, Ann Shalleck, Philadelphia, Pa., for plaintiffs.

Stanley Slipakoff, Philadelphia, Pa., Andrew Gordon, Harrisburg, Pa., for defendants.

## MEMORANDUM OPINION

BECHTLE, District Judge.

This action was originally brought as a challenge to the Pennsylvania Department of Public Welfare's proposed regulations reducing the coverage of abortions funded under the Pennsylvania Medical Assistance Program. *See* Pa.Stat.Ann. tit. 62, §§ 441.-1–447. The complaint was later amended to include a First Amendment claim based on the Free Exercise Clause which challenged the constitutionality of the abortion funding statute, Pa.Stat.Ann. tit. 62, § 453. On July 2, 1981, the Court ordered that the First Amendment claim be dismissed for lack of standing and denied plaintiffs' separate motions for a preliminary injunction and a class determination based on the First Amendment claim. This memorandum sets forth the reasons for that order.

## I. FACTS

In January, 1981, the Pennsylvania Department of Public Welfare ("DPW") sent a notice to all medical assistance recipients which announced the proposed reduction in the coverage of abortions under the medical assistance program to take effect on February 15, 1981. This reduction in benefits was in direct response to Pennsylvania's passage of a new state law which limited the public funding of abortions to those in which a physician certifies that the life of the mother would be endangered if the pregnancy were carried to full term, and cases involving rape or incest. Act of December 19, 1980, P.L. 1321, No. 239, § 1, Pa.Stat.Ann. tit. 62, § 453 (Purdon Supp. 1981–1982).[1]

---

1. Pa.Stat.Ann. tit. 62, § 453 provides:

Expenditure of public funds for abortions limited

Since it is the public policy of the Commonwealth to favor childbirth over abortion, no Commonwealth funds and no Federal funds which are appropriated by the Common-wealth shall be expended by any State or local government agency for the performance of abortion: Provided, That nothing in this act shall be construed to deny the use of funds where a physician has certified in writing that the life of the mother would be endangered if the fetus were carried to full

Counsel stipulated that, prior to this statute, medical assistance was available for all "medically necessary" abortions.

On February 12, 1981, plaintiffs, Jane Doe, Philadelphia Welfare Rights Organization, Exzeal Palmer, John Franklin, M.D., Planned Parenthood Association of Southeastern Pennsylvania, Inc., Elizabeth Blackwell Health Center for Women, and Women Organized Against Rape, filed an action seeking to enjoin DPW from implementing the proposed reductions in publicly funded abortions. Plaintiffs first contended that the proposed reduction in medical assistance benefits violated due process because the proposed changes were to be implemented without notice and a full opportunity for a hearing. Secondly, plaintiffs contended that the implementation of the proposed changes without prior publication of the proposed regulations and an opportunity for public comment, violated both federal and state regulations requiring such notice. See 42 C.F.R. § 431.12 (participation of State Medical Assistance Advisory Committee in proposed changes required); 42 C.F.R. §§ 431.200–242 (1980) (hearing and notice for assistance applicants and recipients required); 42 C.F.R. § 447.205 (1980) (sixty day public notice of proposed changes in Medicaid benefits required); Pa.Stat. Ann. tit. 45, §§ 1102–1208 (Purdon Supp. 1981–1982) (notice and public comment required for promulgation and adoption of regulations); Pa.Stat.Ann. tit. 71 § 232 (Purdon Supp. 1981–1982) (fiscal note required with respect to proposed agency actions). Thirdly, plaintiffs contended that certain specific regulations were not authorized by the language of the newly enacted statute: those which excluded victims of interspousal rape from coverage; those which required that, in order to obtain coverage for resulting abortions, other acts of rape be reported to law enforcement officials or public health services within seven-

ty-two hours after the incident, and that acts of incest be reported within seventy-two hours after a physician had notified the victim that she was pregnant. Finally, plaintiffs contended that the various regulations and policies requiring documentation for the payment of services, the institution of hearing procedures, and various notification requirements, violated due process.

On February 13, 1981, the Court granted plaintiffs' motion for a temporary restraining order preventing the defendants from implementing the proposed reduction in abortion services until they complied with all federal and state requirements. This order was extended by agreement until such time as both parties sought a preliminary injunction hearing.

On April 23, 1981, plaintiffs filed an amended complaint which added Lynn Goldman as a party plaintiff. The amended complaint also contained the additional claim that the abortion funding statute, Pa.Stat.Ann. tit. 62, § 453, violated the Free Exercise Clause of the First Amendment. Succinctly stated, plaintiffs contended that the statute denied women, dependent upon medical assistance, the right to decide to have a medically necessary abortion where their religious beliefs so required.

On May 6, 1981, plaintiffs filed an uncontested motion for a class determination. A brief hearing was held on that date with respect to the status of the case. At that hearing, the Court requested that briefs be submitted on whether plaintiff, Lynn Goldman, had standing to assert the First Amendment claim. On May 14, 1981, another hearing was held and both parties agreed to make a sincere effort to work out any remaining differences aside from the First Amendment issue.

On May 21, 1981, defendant, Gerald Radke, the Deputy Secretary for Medical Assistance, filed an affidavit setting forth the proposed regulations pertaining to the

term or except for such medical procedures necessary for the victims of rape or incest when such rape or incest has been reported promptly to a law enforcement agency or public health service. Nothing contained in this section shall be interpreted to restrict or

limit in any way, appropriations, made by the Commonwealth or a local governmental agency to hospitals for their maintenance and operation, or, for reimbursement to hospitals for services rendered which are not for the performance of abortions.

funding of abortions under the medical assistance program. A hearing was held on May 27, 1981, at which time plaintiffs voiced their objections; in addition, Mr. David Feinberg, the Director of the Bureau of Medical Assistance Policy, testified with respect to the auditing procedures to be used by DPW in checking for fraud or misrepresentations by abortion providers, and with respect to the forms to be used by law enforcement and public health service agencies in handling reports of rape and incest.

On June 8, 1981, an affidavit was filed by Barry A. Roth, the Director of the Office of Hearings and Appeals, confirming to the Court that all hearings arising in relation to the abortion regulations would be expedited and all appeals decided within thirty to sixty days after the date they were filed. A final hearing was held on June 10, 1981, at which time plaintiffs' counsel informed the Court that all of the remaining statutory and due process claims had been successfully resolved. Therefore, the Court dissolved the temporary restraining order, except with respect to the First Amendment claim. At that same hearing, oral argument was heard with respect to the First Amendment issue.

## II. THE FIRST AMENDMENT CLAIM

Lynn Goldman avers that she is thirty-five years old, suffers from terminal cancer, and is a member of the Jewish faith. On February 12, 1981, the date that the original complaint was filed, Ms. Goldman was in the first trimester of pregnancy. While consulting with her doctor, she was informed that, although her pregnancy, if carried to full term, could not be certified as life threatening, the pregnancy would still result in a significant impairment of her recovery from cancer. Ms. Goldman avers that she decided to have an abortion based on her religious training and beliefs, which mandated that she could not bring a child into this world for whom she could not ultimately care, and that it is more important to preserve her strength in fighting the spread of cancer rather than to become

weaker in giving birth, under the Judaic tenet that one should "choose life."

Although dependent upon the medical assistance program for her medical care, Ms. Goldman was still able to obtain an abortion under the public assistance program because of the temporary restraining order preventing a cutback in the coverage of abortions until federal and state requirements had been met.

On April 23, 1981, Ms. Goldman filed her First Amendment claim in the amended complaint, thereby becoming a named plaintiff for the first time in the litigation. She now seeks injunctive and declaratory relief on behalf of herself and all medical assistance recipients in Pennsylvania who require, or will require, medically necessary abortions, and whose conscientious or religious beliefs have led them, or will lead them, to have an abortion for which payment will not be available under the medical assistance program.

It is central to the Court's ruling to note that Ms. Goldman obtained her abortion prior to the date that she filed her claim as a new and separate claim in the form of her amended complaint. The amended complaint is silent as to the exact date that the abortion was performed, but explicitly avers that the abortion had already been performed. This fact raises the preliminary question of whether Ms. Goldman has standing to assert the First Amendment Free Exercise claim. As discussed below, this question is dispositive of the case.

### A. STANDING

Article III of the Constitution imposes the requirement that the plaintiff assert an actual "case or controversy." This threshold requirement of justiciability determines the power of a federal court to entertain a suit. As one aspect of the justiciability requirement, the plaintiff must have standing to challenge the alleged unlawful activity which has been described as entailing a demonstration that the plaintiff has " 'such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal court jurisdiction and to justify ex-

ercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975) (citation omitted). Thus, the plaintiff must first show a "distinct and palpable injury" as well as the "substantial likelihood that the judicial relief requested will prevent or redress the claimed injury." *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72, 79, 98 S.Ct. 2620, 2629–2633, 57 L.Ed.2d 595 (1978). *See also Doherty v. Rutgers School of Law-Newark*, 651 F.2d 893 (3rd Cir. 1981).

In *Harris v. McRae*, 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), the Supreme Court faced a First Amendment Free Exercise challenge to the Hyde Amendment, which limited federal funding of abortions under the Medicaid assistance program. The Court held that the named appellees—(1) indigent pregnant women who sued on behalf of other women similarly situated, (2) two officers of the Women's Division of the Board of Global Ministries of the United Methodist Church, and (3) the Women's Division itself—lacked standing to assert the Free Exercise claim. The first group, the Court held, lacked standing because "none alleged, much less proved, that she sought an abortion under compulsion of religious belief." *Id.* at 2690. The second group lacked standing because "they failed to allege either that they are or expect to be pregnant or that they are eligible to receive Medicaid." *Id.* Finally, the Women's Division, itself, lacked standing because the rights of its individual members were asserted, rather than the rights of the organization as a collective body. *Id.*

In the present case, Ms. Goldman was not pregnant, nor did she expect to be pregnant, on the date that the amended complaint was filed. Rather, she alleged that she had been pregnant on the date that the original complaint was filed, that she had her abortion after the original complaint was filed, and that that pleading did not contain her claim. Ms. Goldman argues that, under Fed.R.Civ.P. 15(c), her First Amendment claim automatically relates back to the date that the original complaint was filed because the amended complaint was filed before the defendants had served a responsive pleading to the original complaint.

She additionally argues that the fact that she had the abortion does not moot her claim because it is one "capable of repetition, yet evading review." *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 713, 35 L.Ed.2d 147 (1973). The Court does not quarrel with the proposition that, if the plaintiff were found to have standing to maintain this suit, the controversy could not now be held to be moot simply because she had had her abortion. However, for the reasons discussed below, the Court holds that plaintiff did not have standing in the first instance.

## B. RELATION BACK

■ Rule 15 of the Federal Rules of Civil Procedure governs the amendment of pleadings in federal court. Subdivision (c) provides for the relation back of amendments to the original pleadings.[2] However,

---

**2.** Rule 15 of the Federal Rules of Civil Procedure provides in pertinent part:

(a) Amendments. A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within 20 days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or

within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

\* \* \* \* \* \*

(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by

"[r]elation back is intimately connected with the policy of the statute of limitations." *Notes of Advisory Committee on Rules*, (1966 Amendment), Federal Rule of Civil Procedure 15. The purpose of "relation back" under subdivision (c) is to ameliorate the effect of the statute of limitations in instances where the opposing party has notice of the suit, but the amending party had failed to assert all possible claims or defenses arising out of the conduct, transaction or occurrences set forth in the original pleading. *See* 6 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1496, at 482–83 (1971).

■ In the present case, Ms. Goldman invokes the "relation back" provisions of Rule 15(c), not for the purposes of avoiding the statutory effect of a statute of limitations establishing an affirmative bar to her lawsuit, but rather, for the purpose of conferring the constitutional prerequisite of standing for maintenance of the suit. The "relation back" principle of Rule 15(c), however, cannot serve artificially to assist the plaintiff to meet the constitutionally mandated requirement of concrete adverseness where the plaintiff, in fact, failed to meet that requirement on the date that the claim was filed. Federal jurisdiction cannot be either enlarged or restricted by the "relation back" principle. *See USM Corporation v. GKN Fasteners Limited*, 578 F.2d 21, 22–23 (1st Cir. 1978); 3 Moore's Federal Practice ¶ 15.02[2] at 15–16 to 15–19 (1980).

Ms. Goldman argues, however, that since she was an unnamed member of the original plaintiff class for purposes of the original complaint, she therefore has standing, even though she did not choose to voice her First Amendment claim at that time because her First Amendment claim was subsumed among the other claims expressed in the original complaint.

■ Again, the Court emphasizes that "relation back" serves as a general exception to the principle that the action or claim

commences on the date it is filed, and that "relation back" only exists for the purpose of ameliorating the effect of statutory bars to relief and not for the purpose of artificially assisting plaintiffs to fulfill constitutional prerequisites, such as standing. *See e. g. American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 550–51, 94 S.Ct. 756, 764–65, 38 L.Ed.2d 713 (1974); *USM Corporation v. GKN Fasteners Limited, supra.* Nor can it be argued that the First Amendment claim was intended to be brought, but was omitted as an oversight in the original complaint.

On February 12, 1981, plaintiffs challenged the proposed reduction in benefits under the DPW regulations to take effect on February 15, 1981. Plaintiffs contended that DPW had failed to meet federal and state requirements with respect to notice and public comment, as well as challenging various regulations, for the reason that they were at odds with the language of the statute and fundamental notions of due process. Nowhere in that complaint was there any hint of a First Amendment claim. At the time of the filing of the amended complaint, the Free Exercise claim was first voiced and was directed at the statute itself, not at the DPW regulations. Thus, it appears that the Free Exercise claim was added as an afterthought after a "suitable" plaintiff was found to bring that claim.

In any event, the Court finds that the "relation back" principle does not apply with respect to constitutionally mandated requirements for suit. Therefore, the Court, by the restrictions imposed by Article III, was bound by its Order of July 2, 1981, to dismiss plaintiffs' First Amendment claim for lack of standing. The Court also denied Ms. Goldman's motion for a class determination of a subclass of women dependent on medical assistance who wished to have medically necessary abortions for religious reasons, because Ms. Goldman cannot represent a class when she

amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have

known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

does not have standing to bring the claim herself. *See Harris v. McRae*, 448 U.S. 297, 320 n.23, 100 S.Ct. 2671, 2690 n.23, 65 L.Ed.2d 784 (1980).

Finally, the Court denied plaintiffs' motion for a preliminary injunction based on the Free Exercise Clause because of the lack of a plaintiff with standing, and, for the same reason, dissolved the temporary restraining order preventing the implementation of the program.