Chris BROSSIA and Katrina Brossia, Plaintiffs–Appellees and Cross–Appellants,

v.

RICK CONSTRUCTION, L.T.D. LIABILITY COMPANY, a limited liability company, Defendant–Appellant and Cross–Appellee.

No. 02CA1338.

Colorado Court of Appeals, Div. I.

Nov. 6, 2003.

F. Brittin Clayton, III, P.C., F. Brittin Clayton, III, Boulder, Colorado, for Plaintiffs–Appellees and Cross–Appellants.

Schey, Piller, Alspaugh & Wong, P.C., Neil E. Piller, James H. Nelson, Longmont, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge LOEB.

In this real estate contract case, defendant, Rick Construction, Ltd. Liability Company (Rick), appeals the trial court's judgment dismissing its counterclaim against plaintiffs, Chris Brossia and Katrina Brossia, for recording a groundless or otherwise invalid document in violation of § 38–35–109(3), C.R.S.2003. The Brossias cross-appeal the judgment dismissing their claim for emotional distress damages. We reverse the judgment dismissing Rick's counterclaim and remand for further proceedings. We affirm the judgment in all other respects.

The Brossias entered into a contract with Rick to purchase real estate and a custom-built home. They gave Rick $80,000 as a deposit before construction of the house. The contract included certain construction specifications.

The Brossias attempted to sell their existing residence and use the proceeds to pay for the new home. However, they had difficulty selling their home and, at one point, the Brossias discussed with Rick the possibility of mutually terminating the contract and Rick selling the new home on the open market as a noncustom home. It is disputed whether any agreement was made concerning mutual termination.

Subsequently, Rick began changing the specifications on the home so it would be more appealing to the general public. Rick also sent a notice to the Brossias that it considered them to have defaulted on the contract, that it was treating the contract as if it were in full force and effect, and that it demanded specific performance.

The Brossias stated to Rick that they were electing to cancel the contract, because, among other reasons, the specifications of the home had been altered, and they demanded return of their deposit. Rick did not return their deposit.

The Brossias filed a complaint against Rick alleging breach of contract and requesting damages, including return of their deposit. The same day, the Brossias recorded a notice of lis pendens in the clerk and recorder's office, giving notice of the litigation. The Brossias subsequently filed an amended complaint specifically requesting that the court impose a constructive trust or equitable lien on the subject property.

Rick answered and counterclaimed against the Brossias, asserting, among other things, that their notice of lis pendens was a groundless or otherwise invalid document. Before trial, the Brossias moved for dismissal of Rick's counterclaim because Rick had not endorsed an expert witness to testify whether the lis pendens was groundless. The trial court granted the motion and dismissed Rick's counterclaim.

The Brossias' complaint did not include a claim for emotional distress damages. However, subsequent disclosures included a request for such damages. After presentation of the Brossias' evidence at trial, Rick moved for dismissal of the claim for emotional distress damages, which the trial court granted.

I.

The trial court ruled that Rick's "counterclaim for frivolous and groundless lien under § 38–35–109(3) could not go to the jury since the allegations in [the Brossias'] Complaint established a rational basis for filing the Lis Pendens and it was incumbent upon [Rick] to

establish, through expert testimony, that the filing was groundless or frivolous." Rick contends that this decision was error. We agree because we conclude that the lis pendens here was invalid as a matter of law.

■ We review a trial court's determination on a motion to dismiss de novo. *Barnett v. Denver Publishing Co. Inc.*, 36 P.3d 145, 147 (Colo.App.2001). In doing so, we accept as true all averments of material fact contained in the complaint, and we view the allegations of the complaint in the light most favorable to the plaintiff. *Public Service Co. of Colo. v. Van Wyk*, 27 P.3d 377, 386 (Colo. 2001). If the complaint contains allegations that support a legally recognized claim for relief, a motion to dismiss must be denied. *See Doe v. High–Tech Institute, Inc.*, 972 P.2d 1060, 1068 (Colo.App.1998).

■ Rick contends that the Brossias violated § 38–35–109(3) by recording their lis pendens when their original complaint sought only money damages and did not claim any relief affecting the title to real property. The Brossias contend that their amended complaint, which included a claim for an equitable lien, related back to the original complaint and so validated the lis pendens. We agree with Rick.

Section 38–35–109(3) provides in pertinent part:

> Any person who offers to have recorded or filed in the office of the county clerk and recorder any document purporting to convey, encumber, create a lien against, or otherwise affect the title to real property, knowing or having a reason to know that such document is ... groundless ... or is otherwise invalid, shall be liable to the owner of such real property for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater, together with reasonable attorney fees.

Section 38–35–110(1), C.R.S.2003, provides, "After filing any pleading in an action ... within this state wherein relief is claimed affecting the title to real property, any party to such action may record in the office of the county clerk and recorder ... a notice of lis pendens...."

■ The filing of a notice of lis pendens is proper if the claimant in the related lawsuit asserted a claim relating to a right of possession, use, or enjoyment of real property. *See* § 38–35–110(1); *James H. Moore & Assocs. Realty, Inc. v. Arrowhead at Vail*, 892 P.2d 367, 373 (Colo.App.1994). The intended purpose of a lis pendens is to provide notice to anyone who may acquire an interest in the property during the pendency of litigation so that he or she will be bound by the outcome. Hence, upon the recording of a lis pendens, one who acquires an interest in real property, which is subject to a claim in litigation that affects title to the property, takes the interest purchased subject to such claim. *See James H. Moore & Assocs., Inc. v. Arrowhead at Vail, supra.*

Thus, although a notice of lis pendens is itself not a lien on the property, it is a document that, properly recorded under § 38–35–110(1), purports to "affect the title to real property" pursuant to § 39–35–109(3).

■ A simple claim for money damages, by itself, does not affect title to real property and thus would not support the filing of a lis pendens. *See Peoples Bank & Trust Co. v. Packard*, 642 P.2d 57, 58 (Colo.App.1982). However, a claim for the imposition of an equitable lien affects title to real property and supports the recording of a lis pendens. *See Leyden v. Citicorp Indus. Bank*, 782 P.2d 6 (Colo.1989)(lis pendens filed in connection with complaint for declaratory judgment to impose an equitable lien); *Emarine v. Haley*, 892 P.2d 343 (Colo.App.1994). Moreover, a claim for an equitable lien, if properly and timely asserted, is not incompatible with a claim for monetary damages and may be requested to preserve funds used to purchase or improve real property. *See Cedar Lane Invs. v. Am. Roofing Supply of Colorado Springs, Inc.*, 919 P.2d 879, 883 (Colo.App.1996)(equitable lien is a form of a constructive trust and provides a security interest in property, which can be used to satisfy a claim); *Emarine v. Haley, supra* (an equitable lien provides a security interest in property, which can be used to satisfy the claim of a person who may have only a partial interest in the property).

Here, the Brossias contend that the facts support a claim for an equitable lien because Rick used the $80,000 deposit to improve the real property, which it then intended to and did sell to a third party. However, the question remains whether the lis pendens recorded by the Brossias was groundless or invalid when it was recorded.

In their original complaint, the Brossias did not assert a claim for an equitable lien or any other claim for relief affecting the title to real property that could support the filing of a lis pendens. Under the plain language of § 38–35–110(1), a lis pendens may only be recorded after a pleading is filed "wherein relief is claimed affecting the title to real property." No such pleading had been filed at the time the lis pendens was recorded here; thus, we conclude that the lis pendens was invalid under § 38–35–109(3).

The Brossias' reliance on *Leyden* is misplaced. There, unlike the Brossias, the plaintiff specifically sought the imposition of an equitable lien in its complaint before it recorded the notice of lis pendens. *See also Emarine v. Haley, supra* (plaintiff recorded lis pendens after filing amended complaint which included a claim for equitable lien and constructive trust).

The Brossias argue that, under C.R.C.P. 15(c), their amended complaint, which included a claim for imposition of an equitable lien, should relate back to the filing of their original complaint for purposes of determining the validity of the lis pendens when it was recorded. We are not persuaded.

Under C.R.C.P. 15(c), whenever a claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading, the amendment relates back to the date of the original pleading. However, the doctrine of relation back is of importance primarily when the statute of limitations is implicated. *See* 6A Wright, Miller & Kane, *Federal Practice & Procedure* § 1496 (2003); *see also Denver & Rio Grande W.R.R. v. Clint,* 235 F.2d 445 (10th Cir.1956) (C.R.C.P.15(c) is identical to Fed. R.Civ.P. 15(c)).

Moreover, in cases involving statute of limitations issues, relation back is applicable when determining the validity of claims in the amended complaint itself. *See, e.g., Roper v. Spring Lake Dev. Co.,* 789 P.2d 483, 484 (Colo.App.1990); *see also Travelers Ins. Co. v. Gasper,* 630 P.2d 97, 100 (Colo.App. 1981)(in certain circumstances, substitution of party is allowed to relate back, and claim is not barred by statute of limitations).

Here, the issue is not the validity of the amended complaint, but rather the validity of the lis pendens, which is tangential to the Brossias' complaint. Pursuant to §§ 38–35–109(3) and 38–35–110(1), the validity of the Brossias' notice of lis pendens is determined at the time it was recorded. Thus, an amended complaint asserting an equitable lien claim to support a previously recorded lis pendens does not alter the fact that the lis pendens, when recorded, had an immediate and inappropriate effect on title and was invalid. *See Peoples Bank & Trust Co. v. Packard, supra* (lis pendens improper where there was no claim for equitable lien and no other claims affecting title to real property).

Although the Brossias' amended complaint may relate back to their original complaint for some purposes under C.R.C.P. 15(c), we conclude that it does not relate back here for the particular purpose of validating, after the fact, the Brossias' otherwise invalid recording of their lis pendens. *See Farber v. Wards Co.,* 825 F.2d 684, 689 (2d Cir.1987)(landlord could not seek retroactive use and occupancy payments by virtue of relation back of amended pleadings, because purpose of relation back is statute of limitations); *Doe v. O'Bannon,* 91 F.R.D. 442, 447 (E.D.Pa.1981)(relation back only exists for purpose of ameliorating effects of statute of limitation; amended complaint did not relate back to original complaint for purposes of granting plaintiff standing).

Therefore, we conclude that, as a matter of law, the notice of lis pendens recorded by the Brossias was invalid under § 38–35–109(3), and the trial court erred in dismissing Rick's counterclaim. Thus, we reverse the trial court's ruling and remand for a determination of Rick's damages under the statute.

## II.

After presentation of the Brossias' case-in-chief, the trial court granted a directed verdict in favor of Rick and dismissed the Brossias' claim for emotional distress damages, finding that the evidence was insufficient to establish a willful and wanton breach of contract as a matter of law. The Brossias contend that this decision was error. We disagree.

We review a trial court's granting of a directed verdict de novo. A motion for directed verdict should not be granted unless the evidence compels the conclusion that reasonable jurors could not disagree and that no evidence or inference has been received at trial upon which a verdict against the moving party could be sustained. The trial judge must view the evidence in the light most favorable to the nonmoving party. *City of Westminster v. Centric–Jones Constructors*, —— P.3d ——, 2003 WL 22098771 (Colo.App. Nos. 01CA0502 & 02CA0602, Sept. 11, 2003).

Noneconomic damages, such as emotional distress damages, are available in breach of contract actions only in extraordinary contractual circumstances where such damages are foreseeable at the time of contracting. *See Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 240, 243 (Colo. 2003) (noneconomic damages are foreseeable in case alleging willful and wanton breach of automobile insurance contract by insurer). A party seeking such damages must prove foreseeability and a willful and wanton breach. *See Giampapa, supra.* In typical commercial contracts, noneconomic damages are not foreseeable because only pecuniary loss is at stake. Because the parties in an ordinary sales situation do not contemplate noneconomic harm at the time of contracting, a willfully breaching party is not responsible for noneconomic damages. *See Giampapa, supra.*

Here, we agree with the trial court that emotional distress damages are not re-coverable under this contract for the purchase of real estate and construction of a home. The Brossias did not present evidence that emotional distress damages were foreseeable by both parties at the time of contracting. Rather, the contract here was more akin to an ordinary sales situation where a breaching party is not responsible for noneconomic damages.

The Brossias argue that they were denied their "dream home," rendering the construction contract personal and of the type described in *Giampapa*, where emotional distress damages may be foreseeable. We disagree. The Brossias did not show that emotional damage allegedly caused by their inability to purchase their dream home was specifically contemplated by both parties at the time of contracting or that the contract, by its very nature, included such a personal component. *Cf. Giampapa, supra* (an insured contracts with an insurer in part for peace of mind and security).

Indeed, the contract contemplated that a breach by Rick, in failing to build the house as specified, might occur, and it provided for specific relief under such circumstances. Moreover, adopting the Brossias' argument would render every home construction contract entered into by individuals subject to a potential claim for damages for the emotional distress experienced when the contract fails. *See Adams v. Frontier Airlines Fed. Credit Union*, 691 P.2d 352, 354 (Colo.App.1984)("Pecuniary loss as the result of a breach of contract almost invariably causes some form and degree of mental distress.").

Because we conclude that the Brossias' emotional distress claim was properly dismissed, we need not address Rick's argument that the trial court erred by admitting any evidence of emotional distress damages.

The judgment dismissing Rick's counterclaim under § 38–35–109(3) is reversed, and the case is remanded for further proceedings in accordance with this opinion. The judgment is affirmed in all other respects.

Judge DAILEY and Judge PIERCE * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.