**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 29, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD CHANCE LEOFF,

        Plaintiff - Appellee/
        Cross-Appellant,

    v.

S AND J LAND COMPANY, a
Colorado limited liability company,

        Defendant - Appellant/
        Cross-Appellee.

Nos. 11-1293, 11-1311

(D. Colorado)

(D.C. No. 1:08-CV-02112-RPM-MEH)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **HARTZ**, and **HOLMES**, Circuit Judges.

Richard "Chance" Leoff and S and J Land Company (S&J) went into

business together to build condominiums in Telluride, Colorado. When the

project faltered and the relationship soured, Leoff filed a mechanic's lien against

the property and sued in federal district court for damages and to enforce the lien.

S&J responded with a counterclaim seeking damages for wrongful filing of a

mechanic's lien and breach of contract, a declaration that S&J and Leoff had

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

formed a partnership, and a winding up of the partnership and an accounting of the partners' rights and obligations. The district court granted partial summary judgment to S&J, holding that the parties had formed a partnership and that under Colorado law a partner cannot place a mechanic's lien on partnership property. Leoff filed an amended complaint asserting fraud and breach of fiduciary duty, and he also filed with the court and recorded with the county clerk a notice of lis pendens. S&J filed an amended counterclaim, adding a claim for damages from the allegedly improper filing of the notice of lis pendens.

After a bench trial on the remaining claims and counterclaims, the court decreed the partnership to be dissolved and ordered the sale of the condominium development. It refused, however, to conduct a final accounting of the partners' respective rights and liabilities. And although it held that Leoff's mechanic's lien and notice of lis pendens had been wrongfully filed, it also refused to award S&J actual damages or attorney fees resulting from those filings, instead awarding only a minimum statutory penalty of $1,000. Both parties appealed. Although we affirm on most of the issues, we reverse and remand for the district court to conduct a final partnership accounting and to permit S&J to present evidence of the attorney fees incurred as a result of Leoff's wrongful mechanic's lien.

## I. BACKGROUND

In 2004 three men agreed to develop a condominium project on a piece of land in Telluride, Colorado. Two of them, Stephen Finger and Jeffrey Lehrer,

-2-

were the only members of S&J, a Colorado limited-liability company. Finger was a Telluride resident with some experience in developing local real estate; Lehrer lived in Scottsdale, Arizona, but had worked with Finger on two earlier local projects. The third man was Leoff, who then lived in Telluride and who knew Finger and Lehrer socially. They referred to the proposed condominiums as the White House Project. S&J paid for the land, and the title was in S&J's name.

Although at first Leoff and S&J did not formally delineate the division of responsibilities for the White House Project, both parties now agree that Leoff was at least in charge of obtaining certain government approvals necessary to begin construction. Leoff apparently maintains that his duties were limited to this task, whereas S&J claims that Leoff was expected to supervise construction as well. Leoff did obtain a building permit sometime in 2006.

Leoff and S&J finally memorialized their arrangement in a document titled "Management Agreement," which was executed on March 14, 2006. R., Vol. IX Ex. A-2 at 1. It recited the parties' prior understanding that "Chance Leoff would manage the project from time of land acquisition to the sale and completion of all units." *Id.* It said that Leoff's specific duties as Manager included the following:

> (1) To manage and oversee the acquisition of the property, the design of development property improvements, including hiring and management of all architects, engineers, and other consultants, to secure a general contractor, and to manage the entitlement and approval process through all required municipalities.

(2)    To execute and deliver required permits, licenses, agreements, contracts, leases, documents and other instruments appropriate in furthering the acquisition, development, design, construction, management and completion of the development property improvements in accordance with the plans, specifications and budgets approved by the members.

(3)    To manage and oversee the construction and development of development property improvements on the development property.

*Id.* The Agreement then declared that the parties agreed "that Duty 1, as specified above, has been completed and that Leoff is entitled to 30% of all profits or losses of S&J, as defined in III-R of the Operating Agreement of S&J, and to be distributed as per Section 6 in the same agreement." *Id.* S&J's "Development Agreement and Operating Agreement," also executed on March 14, described S&J's governance; Leoff was not a signatory. *Id.* Ex. A-1 at 1–18. The Management Agreement also specified that Leoff would be entitled to receive $100,000 before construction was completed; half of that amount was designated as a fee, and the other half would count as an advance on Leoff's share of S&J's profits. Because $10,000 of the $100,000 had already been paid in 2005, the remaining $90,000 was to be paid in monthly installments of $9,000 for each of the ten months after the bank loan for the White House Project became funded.

The White House Project was a troubled one. In July 2006 S&J signed an agreement with a contractor, High Mark Development, Inc., which would be paid its costs plus 15% for building the condominiums. According to S&J, the project

-4-

ran into a host of snags thereafter, allegedly because Leoff delayed in providing the contractor with plans, failed to ensure those plans complied with local building codes, had an uneasy relationship with the architect, and generally neglected to keep either himself or S&J abreast of the day-to-day details of construction. Leoff tells a different story. No sooner had he signed the Management Agreement in March 2006, he claims, than S&J "took control of and assumed complete responsibility for the White House Project." Aplee. Br. at 23. In Leoff's version, S&J negotiated the construction contract, obtained the financing, supervised High Mark and reported on progress to the lending bank, wrote the checks, and marketed the condominiums to potential buyers. Leoff disclaims any responsibility for overseeing construction, asserts that S&J's members never blamed him for problems during construction, and insists that any difficulties were the fault of High Mark, which was supposed to be supervised not by him but by Lehrer.

Whatever the explanation, the cost of the project soon overran the budget as construction continued. S&J was able to negotiate a $200,000 reduction in High Mark's fee, but the various purchasers who had entered into preconstruction contracts to buy condominiums at the White House Project terminated those contracts.

Leoff says that at about this time he became aware of a threat to his stake in the White House Project. Finger was a managing member of a different

limited-liability company, XYZ Land Subdivision LLC (XYZ), which owned a higher-end condominium development in Telluride called Element 52. Local law required Element 52 either to devote a certain number of its own units to affordable housing or to purchase offsetting credits by providing affordable housing elsewhere. Because providing affordable housing onsite would have denied Element 52 valuable rental income, XYZ approached S&J about buying the right to place deed restrictions on several units of the White House Project, thereby earning Element 52 enough credits to satisfy its affordable-housing requirement. A letter from S&J's counsel in May 2008 reflected discussions about such a transaction between S&J and XYZ. According to the letter, XYZ would pay the owners of the White House Project $2.2 million to convert eight of the White House condominiums into lower-priced, deed-restricted units, and the owners of the White House Project would retain the right to sell the deed-restricted units at their diminished price.

Leoff claims that Finger deceived him by working on this deal behind his back. He says that the deal with XYZ would have benefitted Finger as a member of XYZ while diminishing S&J's profits—and therefore Leoff's returns—by appropriating value from the White House Project, S&J's only asset.

In July 2008 Leoff filed with the clerk of San Miguel County, Colorado, a $600,000 mechanic's lien against the White House property. Two months later Leoff filed a complaint against S&J in the United States District Court for the

District of Colorado.  (He had moved to Massachusetts and invoked diversity jurisdiction.)  The complaint asserted that Leoff's efforts had increased the value of the White House Project by no less than $800,000.  It sought to enforce the mechanic's lien and recover damages of at least $800,000.  Leoff later filed with the court a notice of lis pendens asserting an interest in the White House property.  He also filed with the county clerk an amended mechanic's lien, now claiming $847,864.21.

S&J counterclaimed against Leoff, requesting the following relief:  (1) a declaration that Leoff and S&J had formed a partnership to develop the White House Project; (2) a winding up of the partnership's business and a final accounting of the partners' rights and obligations; (3) the invalidation of Leoff's mechanic's lien and damages, including attorney fees, arising from the lien; and (4) damages for Leoff's breach of the Management Agreement.

S&J moved for partial summary judgment on Leoff's claims under the mechanic's lien.  It argued that the lien was invalid because the White House Project belonged to a partnership between Leoff and S&J and a partner has no right to file a mechanic's lien against partnership property.  The district court granted the motion in June 2009 and gave Leoff permission to file an amended complaint.  Leoff did so, adding three new claims:  a claim that S&J had defrauded him, a claim that S&J had breached its fiduciary duties to Leoff as its

partner, and a claim for injunctive relief to prevent S&J from transferring any rights associated with the White House property.

About two weeks after filing his amended complaint, Leoff filed with the court and recorded with the county clerk a new notice of lis pendens, asserting that his status "as a member of an unnamed partnership" with S&J gave him a property interest in the White House property. R., Vol. II at 239. S&J moved for an order to show cause why the notice of lis pendens should not be invalidated. It contended that the Management Agreement gave Leoff a 30% interest in S&J's profits and losses but did not confer on Leoff any ownership interest in the White House property itself. Rather, S&J insisted, Leoff's sole recourse was for money damages, and the lis pendens was an improper cloud on the title that rendered the White House property unmarketable. S&J said that the lis pendens had prevented it from selling the property, causing it to suffer damages in the form of forgone sales proceeds, attorney fees, and added interest expense on the bank loan.

The court denied the motion, deferring it until trial. The court also denied a later motion by S&J to sell the White House property notwithstanding the lis pendens.

The district court conducted a three-day bench trial in November 2010, with closing argument the following month. It entered a Decree of Dissolution and Order of Sale, which recognized the relationship between Leoff and S&J as a partnership; decreed that the partnership was dissolved; and instructed S&J to

supervise the winding up of the partnership's affairs—including selling the partnership's only asset, the White House property. S&J sold the property at an auction on January 28, 2011, at which S&J itself tendered the high bid of $3,150,000.

After further briefing, the district court filed an opinion ruling: (1) the Management Agreement had established a partnership between Leoff and S&J for the White House Project; (2) S&J had dissociated as a partner by acting in a manner that made it "not reasonably practicable to carry on the business in partnership," Colo. Rev. Stat. § 7-64-601(1)(e)(III) (2012), triggering the partnership's dissolution under § 7-64-603 of Colorado's version of the Uniform Partnership Act; (3) Leoff's second notice of lis pendens was improper, subjecting him to statutory liability under Colorado law; (4) S&J had not proved actual damages arising from Leoff's improper mechanic's lien and lis pendens, but a Colorado statute still provided that S&J could recover from Leoff a penalty of $1,000 for the lis pendens and S&J would be entitled to attorney fees for efforts to seek release of both the mechanic's lien and the lis pendens; and (5) S&J nevertheless could not recover attorney fees because "release of the lis pendens was but a minor part of this litigation and not separable from other issues." R., Vol. IX at 1688. As for S&J's request for an accounting and Leoff's then having to pay his 30% share of partnership losses (and to refund the $50,000 advance on profits that he had received), the court denied an accounting because

the only partnership asset had already been sold and S&J could not show that the partnership's losses "would have occurred regardless of the conduct of the parties." R., Vol. IX at 1686. It further ruled that Leoff did not have to repay the $50,000 advance on profits because the Management Agreement defined Leoff's stake as 30% of *S&J*'s profits or losses, not 30% of the *partnership*'s profits or losses, and S&J's tax returns were not in evidence. The court ordered Leoff to pay $1,000 to S&J for wrongful filing of the notice of lis pendens, and it dismissed all other claims and counterclaims with prejudice.

Both parties appealed. S&J raises five arguments: (1) although the district court was correct in dissolving the partnership between Leoff and S&J and ordering the sale of the White House property, it erred in failing to order the final accounting prescribed by Colo. Rev. Stat. § 7-64-807 (2012); (2) having decided that Leoff's mechanic's lien was improperly filed, the court should have awarded S&J its attorney fees under Colo. Rev. Stat. § 38-22-128 (2012) in addition to merely discharging the lien; (3) rather than awarding S&J only the statutory minimum penalty of $1,000 under Colo. Rev. Stat. § 38-35-109(3) (2010) as a remedy for Leoff's second notice of lis pendens, the court should have awarded S&J actual damages; (4) the court erred in denying S&J its attorney fees related to Leoff's second notice of lis pendens; and (5) the court erred in failing to hold that Leoff had breached his partnership obligations to S&J when he impeded the sale of affordable-housing rights to XYZ and the later sale of the White House

-10-

property. Leoff's cross-appeal raises only one claim: that the court erred in granting summary judgment to S&J on the mechanic's lien, because Leoff and S&J had not formed a partnership.

## II. DISCUSSION

We first address Leoff's cross-appeal and then the issues raised by S&J.

### A. Existence of Partnership

Leoff's initial complaint includes a claim to enforce the mechanic's lien he filed against the White House property for improvements resulting from his efforts. The district court awarded partial summary judgment to S&J on this claim. It determined that Leoff was a partner of S&J and then applied the rule of *Damrell v. Creagar*, 599 P.2d 262, 263–64 (Colo. App. 1979), that a partner cannot file a mechanic's lien against partnership property.

In determining that Leoff and S&J had formed a partnership, the district court followed settled Colorado law. Colorado's version of the Uniform Partnership Act defines a partnership as "the association of two or more persons to carry on as co-owners a business for profit . . . whether or not the persons intend to form a partnership." Colo. Rev. Stat. § 7-64-202(1) (2012). Interpreting nearly identical language in an earlier partnership statute, *see id.* § 7-60-106 (2012) ("A partnership is an association of two or more persons to carry on, as co-owners, a business for profit . . . ."), the Colorado Supreme Court explained that "a partnership is a contract, express or implied, between two or

-11-

more competent persons to place their money, effects, labor or skill, or some or all of them, into a business, and to divide the profits and bear the losses in certain proportions." *Grau v. Mitchell*, 397 P.2d 488, 489 (Colo. 1964). As the final clause of the statutory definition indicates, parties can form a partnership by their conduct alone, regardless of their actual intentions. *See Stratman v. Dietrich*, 765 P.2d 603, 605 (Colo. App. 1988); *Yoder v. Hooper*, 695 P.2d 1182, 1187 (Colo. App. 1984), *aff'd*, 737 P.2d 852 (Colo. 1987) (en banc).

The district court concluded that Leoff and S&J were partners because the 2006 Management Agreement provided for the sharing of profits and losses. The Agreement states that "Leoff is entitled to 30% of all profits or losses of S&J" and that "[i]f S&J suffered a loss rather than a profit, than [*sic*] Leoff's pro-rata share must be accounted for." R., Vol. IX Ex. A-2 at 1.

Leoff concedes that a partner cannot file a mechanic's lien against partnership property under Colorado law, but he disputes that he actually formed a partnership with S&J. In reviewing the district court's decision to the contrary, we must apply the same standard that the court should have applied in granting summary judgment. *See Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1218 (10th Cir. 2006). That is, we must view the record in the light most favorable to Leoff and ask whether it discloses any genuine issue of material fact with respect to the existence of a partnership. *See id.*; Fed. R. Civ. P. 56(c).

Leoff argues that several facts undermine the district court's ruling. He points out that the parties never expressly designated each other as partners: the Agreement was titled "Management Agreement" rather than "Partnership Agreement," and it referred to Leoff not as a partner or owner, but as a "Manager." And he emphasizes the absence of any correspondence referring to the relationship as a partnership. But he ignores that a partnership can be created without any formalities and regardless of the parties' intentions. *See* Colo. Rev. Stat. § 7-64-202(1) (partnership may exist "whether or not the persons intend to form a partnership"); *Grau*, 397 P.2d at 489 (partnership is a contract that may be "express or implied"); *Yoder*, 695 P.2d at 1187 ("[N]o express agreement is necessary; rather, a partnership may be formed by the conduct of the parties."). Similarly, Leoff's observation that the "Development Agreement and Operating Agreement of S & J Land Company, LLC," R., Vol. IX at 1694, makes no mention of Leoff is irrelevant. The issue is whether Leoff and S&J became partners *with each other*, not whether Leoff was made a partner in S&J.

Leoff also calls attention to a Colorado statutory provision providing exceptions to the presumption that one who shares in a business's profits is a partner of that business. It states: "A person who receives a share of the profits of a business is presumed to be a partner in the business, unless the profits were received in payment . . . [f]or services as an independent contractor or of wages or other compensation to an employee . . . ." Colo. Rev. Stat. § 7-64-202(3)(c).

-13-

Leoff argues that his sharing in S&J's profits constituted wages for his contracting services and that the statute therefore rules out any presumption of a partnership. But Leoff was sharing in *losses* as well as profits. He has presented no authority that one sharing in both profits and losses can be merely an employee or independent contractor.

Finally, Leoff advances three arguments on appeal that were not presented to the district court in the summary-judgment pleadings. First, he claims that Colo. Rev. Stat. § 7-60-107 (2012) defeats any presumption of a partnership because it contains language similar to that found in § 7-64-202. *See id.* § 7-60-107(1)(d) ("The receipt by a person of a share of the profits of a business is prima facie evidence that the person is a partner in the business, but no such inference shall be drawn if such profits were received in payment . . . [a]s wages of an employee . . . ."). Second, he contends that he was not a partner in the *White House Project* because the Management Agreement gave him a share of *S&J*'s profits or losses, not a share of the *White House Project*'s profits or losses. And third, noting that S&J, not the White House partnership, held title to the White House property, he argues that he was not placing a lien on partnership property. We question the merits of these arguments. In particular, § 7-60-107 is no more helpful to Leoff than was § 7-64-202; and the White House property could be owned by the partnership even if titled in the name of a partner, *see id.* § 7-64-302(1)(c) (2012). But we reject the arguments without resolving their

-14-

merits because Leoff forfeited them by failing to make them in opposing summary judgment. *See Cummings v. Norton*, 393 F.3d 1186, 1190–91 (10th Cir. 2005).

Thus, we deny Leoff's challenges to the ruling of the district court that Leoff and S&J formed a partnership under Colorado law. The district court committed no error in awarding partial summary judgment to S&J.

## B.     Failure to Conduct Accounting

S&J's first claim on appeal is that the district court, having properly decided that Leoff and S&J formed a partnership, improperly refused to grant a final accounting of the partners' rights and obligations after the White House property was sold. S&J says that the court erroneously decided that no further judicial action was required after the court had arranged for the sale of the property and determined that neither party could collect against the other for misconduct. According to S&J, regardless of whether any partnership losses were caused by misconduct, the partnership between Leoff and S&J still had losses that must be apportioned between the two parties under Colorado law.

We agree with S&J. If there was no misconduct by any partner, surely the partnership's losses would have to be calculated and then divided between the partners as Colorado's partnership statute requires. *See* Colo. Rev. Stat. § 7-64-807 (prescribing the settlement of partnership accounts upon the winding up of the partnership); *cf. Tucker v. Ellbogen*, 793 P.2d 592, 597 (Colo. App. 1989) ("Generally, a partnership dismantling proceeds through a three-step

process: dissolution, winding up, and termination."). And if there had been partner misconduct causing damages, the same calculation and division would be required but then followed by a further monetary transfer based on the damages. In both circumstances, the accounting would be conducted independently of the determination of fault. We see no reason why the failure of either party to prove damages from the other partner's misconduct should require the district court simply to preserve the status quo rather than conduct the statutorily required accounting.

We note that apparently another reason why the district court refused to conduct an accounting was that S&J's tax returns were not in evidence even though the Management Agreement provided that Leoff would share in 30% of S&J's profits or losses based on "the Company's *taxable* income or loss for each Fiscal Year or other period." R., Vol. IX at 1697 (emphasis added). But at a hearing on March 31, 2011, about two months before the district court issued its decision, the court, at the suggestion of Leoff's counsel, indicated that an examination of the books and records for an accounting was premature. We think that S&J could reasonably infer that it would have a later opportunity to present any documents deemed necessary for an accounting. Leoff does not argue otherwise on appeal. We therefore reverse the denial of an accounting and remand for further proceedings on that matter.

### C.    Attorney Fees—Mechanic's Lien

S&J argues that the district court erred by not ordering Leoff to pay S&J's attorney fees in connection with litigating the mechanic's lien, as required by Colo. Rev. Stat. § 38-22-128. The court's Memorandum Opinion and Order does not explain why it did not award attorney fees, although it does suggest that they would be difficult to calculate accurately because the issue was "but a minor part of this litigation and not separable from the other issues." *Id.* at 1688. At trial, however, the court plainly ruled that the amount of attorney fees would be determined in proceedings after the trial, *see* R., Vol. VI at 1067–69, proccedings that did not occur. We therefore remand with instructions to allow S&J to attempt to prove the amount of attorney fees under § 38-22-128.

## D. Notice of Lis Pendens

S&J's next two claims are that the district court erred in failing to award actual damages and attorney fees arising from Leoff's second notice of lis pendens, filed in June 2009 after Leoff filed his first amended complaint. Although the court ruled that the notice of lis pendens was improper and gave rise to statutory liability under Colo. Rev. Stat. § 38-35-109, it ruled that any actual damages were too speculative and that attorney fees would be denied because "release of the lis pendens was but a minor part of this litigation and not separable from the other issues." *Id.* It did, however, award S&J a recovery of $1,000, the minimum statutory penalty for wrongful filings.

We deny S&J relief because it has not shown that it is entitled to damages under the Colorado statute. Our review of this issue of Colorado law is de novo. *See United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 956 (10th Cir. 2011).

Colo. Rev. Stat. § 38-35-109(3) provides, in relevant part:

Any person who offers to have recorded or filed in the office of the county clerk and recorder any document purporting to convey, encumber, create a lien against, or otherwise affect the title to real property, *knowing or having a reason to know that such document is* forged or *groundless*, contains a material misstatement or false claim, or is otherwise invalid, shall be liable to the owner of such real property for the sum of not less than one thousand dollars or for actual damages caused thereby, whichever is greater, together with reasonable attorney fees.

(emphasis added). S&J contends that Leoff knew or had reason to know that the notice of lis pendens was "groundless."

To assess whether the second notice of lis pendens was groundless, we turn to the Colorado statutory provision that authorizes a party to file such a document. The provision says:

*After filing any pleading* in an action in any court of record of this state or in any district court of the United States within this state *wherein relief is claimed affecting the title to real property*, *any party* to such action *may record in the office of the county clerk* and recorder in the county or counties in which the real property or any portion thereof is situated *a notice of lis pendens* containing the name of the court where such action is pending, the names of the parties to such action at the time of such recording, and a legal description of the real property.

-18-

*Id.* § 38-35-110(1) (2012) (emphasis added). "[T]he only prerequisite imposed on the action to which the notice of lis pendens pertains is that it be one affecting title to real property." *Kerns v. Kerns*, 53 P.3d 1157, 1161 (Colo. 2002) (internal quotation marks omitted).

The Colorado Supreme Court has interpreted the statute to effectuate its purpose, stating:

> The policy that successful completion of a suit involving rights in real property should not be thwarted by permitting transfers of interests in real property to persons not bound by the outcome of the suit continues in its full vigor. *This policy would be furthered by giving an expansive interpretation to the language "affecting the title to real property"* . . . .

*Hammersley v. District Court*, 610 P.2d 94, 96 (Colo. 1980) (en banc) (emphasis added). Although an action advancing claims solely for money damages "does not affect title to real property and thus would not support the filing of a lis pendens," *Brossia v. Rick Constr., L.T.D. Liab. Co.*, 81 P.3d 1126, 1129 (Colo. App. 2003), notices of lis pendens are appropriate in connection with a variety of claims, such as a claim to impose a constructive trust, *see Kerns*, 53 P.3d at 1160, a claim for specific performance of a property-sale contract, *see Platt v. Aspenwood Condo. Ass'n Inc.*, 214 P.3d 1060, 1068 (Colo. App. 2009), a claim for an injunction to enforce restrictive covenants, *see Hammersley,* 610 P.2d at 95, a claim for the rescission of a deed of trust, *see Cooper v. Flagstaff Realty*,

634 P.2d 1013, 1014–15 (Colo. App. 1981), and a claim to contest the validity of

a will, *see Pierce v. Francis*, 194 P.3d 505, 510 (Colo. App. 2008).

A notice of lis pendens is not groundless just because the underlying claim

is later denied. *See Platt*, 214 P.3d at 1068. Rather, a document is "groundless"

within the meaning of § 38-35-109(3) only if it is "one as to which a proponent

can advance no rational argument based on evidence or law to support his or her

claim." *Id.*

S&J contends that Leoff's amended complaint, which was filed before

Leoff filed the second notice of lis pendens, could not justify a notice of lis

pendens. But its only argument in support is one sentence: "Leoff did not plead

a valid claim against the White House Property or even a constructive trust claim,

making *Pierce v. Francis* [a will contest] and *Kerns v. Kerns* [constructive-trust

claim] inapplicable." Aplt. Reply Br. at 42 (citations omitted). We view the

matter otherwise. The amended complaint asserts that Finger concealed from

Leoff the plan to sell the White House property's affordable-housing rights to

Element 52. It raises a claim of fraud, alleging that selling the rights to Element

52 would "destroy[] the marketability of the White House units[,] . . . rendering

Leoff's profit potential a nullity," R., Vol. II at 234, and, alternatively, a breach

of fiduciary duty based on the same allegations. For relief, the complaint seeks

"such equitable relief as is reasonably necessary to protect the interests of

Plaintiff, including, as applicable, temporary restraining order(s), preliminary and

permanent injunctive relief, to prohibit S and J from . . . transfer or sale of any part of the rights inherent in the White House project." *Id.* at 235–36.  In other words, Leoff sought to enjoin a sale of an interest in the White House property that allegedly would wrongfully impair his financial interest in the partnership profits.  We need not resolve (1) whether the alleged fraud would justify an injunction against transfer or sale of any rights in the White House property or (2) whether a proper action to enjoin transfer of rights in real property can justify filing a notice of lis pendens.  We need only decide whether Leoff could not advance a "rational argument based on evidence or law to support" an affirmative answer to those questions.  *Platt*, 214 P.3d at 1068.  S&J's abbreviated discussion of the issue (perhaps so abbreviated as to waive the issue, *see Utahns for Better Transp. v. U.S. Dep't of Transp.*, 305 F.3d 1152, 1169, 1190 (10th Cir. 2002)) has not persuaded us that such a rational argument would not be possible.

Because S&J has not shown that Leoff's filing violated § 38-35-109(3), we affirm the district court's refusal to award actual damages or attorney fees under that provision.  (Nevertheless, because Leoff did not cross-appeal from the portion of the judgment awarding the $1,000 penalty, we do not set aside that award.  *See Greenlaw v. United States*, 554 U.S. 237, 244–45 (2008) ("[A]n appellate court may not alter a judgment to benefit a nonappealing party.  This Court, from its earliest years, has recognized that it takes a cross-appeal to justify

a remedy in favor of an appellee."); *United States v. Madrid*, 633 F.3d 1222, 1225 (10th Cir. 2011).)

### E.    Liability of Leoff for Breach of Agreement and Fiduciary Duty

S&J's final contention on appeal is that the district court erred in failing to find Leoff liable for damages for breaching (1) the Management Agreement (by failing to oversee construction) and (2) his fiduciary duties to the partnership (by improperly filing a mechanic's lien and a notice of lis pendens).  As for breach of the Agreement, the court found that S&J had not proved that Leoff was responsible for the delays in construction and the resulting cost overruns because Lehrer had assumed an active role in supervising High Mark's progress.  S&J asserts that this finding was error because "[t]he record . . . contains significant undisputed testimony that only Leoff was obligated by the Partnership Agreement to oversee the contractor and manage and oversee construction . . . ."  Aplt. Br. at 43 (internal quotation marks omitted).  But S&J provides no record citations for this proposition, and Leoff testified to the contrary.  We cannot agree that the court's finding was clearly erroneous.  *See Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1078 (10th Cir. 2009) (appellate court can overturn district court's fact finding only if clearly erroneous).

Similarly, the district court found that S&J had not proved that the mechanic's lien or the notice of lis pendens had caused damages because neither of the transactions that S&J says were thwarted was ever more than a speculative

possibility.  This finding, too, was not clearly erroneous.  We therefore affirm on this issue.

## III.   CONCLUSION

We REVERSE the district court's denial of a final partnership accounting and the denial of attorney fees arising from the mechanic's lien and REMAND for further proceedings on those matters.  In all other respects, we AFFIRM the district court's judgment.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge