FILED
United States Court of Appeals
Tenth Circuit

April 21, 2009

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

CREATIVE CONSUMER
CONCEPTS, INC.,

      Plaintiff–Counter-
Defendant-Appellee,

v.

LAURA KREISLER,

      Defendant–Counter-
Claimant-Appellant.

No. 07-3142

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS
(D.C. No. 05-CV-2045-CM)**

---

Jonathan P. Tomes (Richard D. Dvorak with him on the briefs), Tomes & Dvorak, Chartered, Overland Park, Kansas, for Defendant–Counter-Claimant–Appellant.

Lara M. Owens (Rachel H. Baker with her on the briefs), Seigfreid, Bingham, Levy, Selzer & Gee, P.C., Kansas City, Missouri, for Plaintiff–Counter-Defendant–Appellee.

---

Before **MURPHY**, **McKAY**, and **GORSUCH**, Circuit Judges.

---

**McKAY**, Circuit Judge.

In this case, we are called upon to review a procedural challenge to the timeliness of an affirmative defense and to determine whether a district court's findings and conclusions were adequately supported by evidence and law. We also review the court's denial of a motion to stay. For the reasons that follow, we affirm.

## BACKGROUND

From 1998 to 2004, Defendant Laura Kreisler worked for Plaintiff Creative Consumer Concepts, Inc. (CCC), an integrated brand-marketing agency. In June 2003, Ms. Kreisler became a vice president of the company. All of CCC's production and operations departments reported to her.

In the fall of 2004, Bob Cutler, the president and sole shareholder of CCC, decided to terminate Ms. Kreisler's employment, for reasons unrelated to this case. On November 5, 2004, Mr. Cutler met with Ms. Kreisler, fired her, and handed her an unsigned severance agreement. He instructed Ms. Kreisler to direct any contact regarding the agreement or her severance generally to the human resources department.

The agreement Mr. Cutler gave Ms. Kreisler provided her with benefits in exchange for her release of CCC from potential legal claims. However, it did not release Ms. Kreisler from claims by CCC. After leaving with the severance agreement, Ms. Kreisler contacted the human resources manager, Joy Baker-Flanigan. She requested additional items related to the termination, such as a

letter of recommendation and reimbursements for some expenses. Ms. Flanigan took Ms. Kreisler's requests to Mr. Cutler for approval and, with his permission, satisfied these requests without including them in the agreement. Then, without contacting CCC, Ms. Kreisler scanned the severance agreement into her computer and added a mutual release provision. Specifically, Ms. Kreisler modified the second paragraph to indicate CCC was releasing her from any claims resulting from her actions while employed at CCC. She made comparable modifications to the sixth paragraph.

A number of days after Ms. Kreisler met with Mr. Cutler, Ms. Flanigan met with Ms. Kreisler in a restaurant parking lot. Ms. Kreisler handed Ms. Flanigan the severance agreement. Ms. Flanigan briefly looked at the agreement, then signed it in Ms. Kreisler's presence. Ms. Kreisler never disclosed to Ms. Flanigan that she had altered the agreement. Shortly thereafter, CCC began providing Ms. Kreisler with the benefits and payments provided for in the agreement.

Then, on December 7, 2004, CCC learned Ms. Kreisler had embezzled funds from the company, although the full extent of the loss was unknown at that time. Around the same time, CCC learned of the release Ms. Kreisler had added to the severance agreement. CCC immediately stopped providing Ms. Kreisler with benefits and payments pursuant to the agreement. Eventually, CCC determined Ms. Kreisler had embezzled around $860,000 over the course of three or four years.

CCC filed a complaint against Ms. Kreisler in the United States District Court, District of Kansas, on January 28, 2005. The complaint alleged the severance agreement should be rescinded because Ms. Kreisler materially altered its terms, unbeknownst to CCC. Independent of that claim, CCC sought damages from Ms. Kreisler for breaching her fiduciary duty, being a faithless servant, and committing fraud, among other things. Ms. Kreisler filed a *pro se* answer and counterclaim on March 3, 2005.[1] Read liberally, Ms. Kreisler's pleading asserted a defense of mutual release and counterclaimed that CCC could not sue her and that it owed her the benefits of the agreement because of the mutual release clause. The parties agreed to a bench trial as opposed to a jury trial on the sole issue of the validity of the mutual release. Counsel subsequently entered an appearance for Ms. Kreisler, and the bench trial was held on December 20, 2005.

Just before the bench trial began, CCC submitted a supplemental trial brief regarding Ms. Flanigan's lack of authority to bind CCC to the severance agreement. Ms. Kreisler objected to the late submission of the brief and asked for a continuance to research the law and to develop challenges to the brief's factual premises. CCC responded that the brief only addressed issues of authority that had been covered in discovery. The court gave Ms. Kreisler time to review the brief and an opportunity to point to evidence the theory might impact, indicating

---

[1] We have *sua sponte* supplemented the record on appeal with Ms. Kreisler's Answer to Complaint (Doc. 7). *See* Fed. R. App. P. 10(e)(2)(c).

that if there were no such evidence, the court would proceed with the trial but would give Ms. Kreisler a full opportunity to respond afterward. Although Ms. Kreisler's counsel expressed certainty that he could rebut certain facts in the brief, the only specific fact he listed as rebuttable was CCC's claim that Ms. Kreisler received no severance pay pursuant to the agreement. The court ultimately denied Ms. Kreisler's motion for a continuance, but granted Ms. Kreisler leave to submit her own supplemental brief on the issue of authority and reminded her that she could controvert the theory through witness examination.

During the trial, CCC introduced evidence on the issue of authority. For instance, Mr. Cutler testified that he had told both Ms. Kreisler and Ms. Flanigan that only he had authority to set terms of severance agreements. Ms. Flanigan merely had authority to sign previously approved agreements on behalf of CCC and, when she was still employed by CCC, Ms. Kreisler's authority was also limited to executing the original offer. Mr. Cutler denied ever authorizing anyone at CCC to sign a modified severance agreement or to enter into a mutual release with Ms. Kreisler.

Likewise, Ms. Flanigan testified that Mr. Cutler was the only person at CCC with authority to approve changes to a severance agreement. Consequently, she lacked authority to sign the agreement Ms. Kreisler altered. Ms. Flanigan indicated that the protocol at CCC was the same when Ms. Kreisler dealt with severance agreements. Ms. Flanigan also testified that when Ms. Kreisler handed

her the modified agreement, she thought it was the original, unaltered agreement. Ms. Flanigan said she would not have signed the document if she had known any changes had been made; instead, she would first have taken it to Mr. Cutler for review and approval, consistent with CCC's protocol.

Also during the trial, CCC read portions of Ms. Kreisler's deposition into evidence over Ms. Kreisler's objection. In her deposition, Ms. Kreisler admitted familiarity with CCC's process for preparing and executing severance agreements. She acknowledged she had no authority to execute modified agreements without Mr. Cutler's approval during her employment at CCC. She conceded that she also knew Ms. Flanigan lacked that authority as well. Moreover, Ms. Kreisler knew of no instances during her employment in which CCC had entered into a severance agreement containing a mutual release. Finally, Ms. Kreisler admitted to being surprised when Ms. Flanigan signed the agreement, because she thought Mr. Cutler would be handling the paperwork and that Ms. Flanigan would be taking the documents to him.

## ANALYSIS

On appeal, Ms. Kreisler raises four main issues. Primarily, Ms. Kreisler claims the district court erred by allowing CCC to pursue a new affirmative defense just before the trial began. She also challenges the court's findings of fact and conclusions of law generally. In a related claim, Ms. Kreisler contends the court erroneously admitted her deposition testimony at the bench trial.

-6-

Finally, Ms. Kreisler argues the court abused its discretion by denying her request for a stay during the pendency of parallel criminal proceedings against her.

## I.    New Defense Theory

Ms. Kreisler first raises a procedural argument.  She contends the court erred when it allowed CCC to present evidence that Ms. Flanigan lacked authority to bind CCC to the modified agreement because CCC never raised this theory as an affirmative defense in its pleadings or its trial brief.[2]

Generally, whether a party has waived an affirmative defense is a mixed question of law and fact, requiring us "to accept the district court's factual conclusions unless clearly erroneous but review the application of the facts to the law under a de novo standard."  *FDIC v. Oaklawn Apartments*, 959 F.2d 170, 173 (10th Cir. 1992).  To the extent Ms. Kreisler challenges the district court's admission of evidence as to this defense, however, we review only for plain error because Ms. Kreisler merely objected to the late submission of the supplemental brief.  This objection and her request for additional time cannot be construed as an objection to the admission of evidence of authority as falling outside the

---

[2] At times, Ms. Kreisler characterizes this as a straight evidentiary challenge.  However, her argument is procedural first and foremost, focusing on CCC's failure to plead lack of authority.  At oral argument, Ms. Kreisler also claimed the court erred by denying her motion for a continuance based on the lack of notice of CCC's authority defense.  Because Ms. Kreisler only cursorily mentioned her continuance in her brief in conjunction with her jury demand, she did not properly raise it in this context, so we do not address it.

pleadings. Ms. Kreisler never claimed the evidence fell outside the pleadings until she filed a motion to strike after trial. Moreover, she made no contemporaneous or continuing objections to any of the evidence offered at trial. *See McEwen v. City of Norman*, 926 F.2d 1539, 1544 (10th Cir. 1991); *see also Macsenti v. Becker*, 237 F.3d 1223, 1230–31 (10th Cir. 2001) (finding motion to strike at the close of evidence insufficient to preserve the issue for review). Therefore, the admission of evidence is properly reviewed for plain error. To secure relief under this standard, Defendant must show: (1) an error, (2) that is plain (clear or obvious under current law), and (3) that affects substantial rights. *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007). If Defendant satisfies these criteria, we may exercise discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (internal quotations marks omitted).

At the outset, this claim is difficult to analyze because Ms. Kreisler began the case *pro se*. Nonetheless, it is clear from her answer to CCC's complaint that she asserted mutual release both as a general basis of denial of CCC's claims and as a basis for her counterclaim. Put differently, in her counterclaim, Ms. Kreisler asserted the validity of the severance contract and her entitlement to the benefits of it, including the mutual release provision. Rule 8(c) requires defendants to set forth specified affirmative defenses in an answer along with any other matters constituting "an avoidance or affirmative defense." Fed. R. Civ. P. 8(c). CCC's

theory of lack of authority is an avoidance defense to Ms. Kreisler's assertion that the mutual release was valid and enforceable. Consequently, under Rule 8, CCC had an obligation to specifically plead lack of authority in its response to the counterclaim. *See id.*; *Radio Corp. of Am. v. Radio Station KYFM, Inc.* 424 F.2d 14, 18 (10th Cir. 1970). However, CCC failed to do so, instead raising other defenses in its answer and reserving the right to identify additional defenses as they arose during the course of discovery.

CCC first formally identified its lack-of-authority theory for the court in its supplemental brief filed the first day of trial. The general rule is that a party waives its right to raise an affirmative defense at trial when the party fails to raise the defense in its pleadings. *Hassan v. U.S. Postal Service*, 842 F.2d 260, 263 (10th Cir. 1988). However, in considering this rule, we must keep in perspective that "the liberal pleading rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses." *Id.* Therefore, "[w]e must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule." *Id.* Rule 8(c)'s ultimate purpose is

> simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it. When a plaintiff has notice that an affirmative defense will be raised at trial, the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice. And, when the failure to raise an affirmative defense does not prejudice the plaintiff, it is not error for the trial court to hear evidence on the issue.

*Id.* (citation omitted). Although it would have been preferable for CCC to raise the defense earlier, in light of the circumstances, we conclude the district court did not err by allowing CCC to supplement its brief, nor did it err—much less plainly err—by allowing CCC to present evidence on the issue of authority. Because we conclude, for the reasons discussed below, that Ms. Kreisler had notice of the defense of lack of authority and, therefore, suffered no prejudice from CCC's failure to comply with Rule 8(c), we see no error in the court's decision.

As of June 2005, Ms. Kreisler had actual (albeit informal) notice of CCC's authority defense. During her own deposition, CCC asked Ms. Kreisler numerous questions about Ms. Flanigan's authority, as well as about Ms. Kreisler's authority when she had similar job duties at CCC. Therefore, Ms. Kreisler had notice of the theory during discovery—well before trial—when she had full opportunity to follow up with her own research and discovery. During discovery, Ms. Kreisler conducted numerous depositions and requested detailed document production. She had ample opportunity to pursue the issue. Indeed, it appears she did—at oral argument, Ms. Kreisler's counsel asserted that the written proffer of testimony the court refused to accept at the end of trial related to the issue of lack of authority, suggesting Ms. Kreisler was prepared to address the issue of authority at trial.

Further, the court minimized any prejudice to Ms. Kreisler by providing her

with a reasonable opportunity to respond to the authority evidence. After Ms. Kreisler initially objected to the supplemental brief, the court gave her time to read it and asked her to suggest evidence she might raise if granted a continuance. Ms. Kreisler was unable to suggest any relevant evidence she might raise. Finally, the court gave Ms. Kreisler the opportunity to fully brief and rebut the tardily raised affirmative defense after the trial. In her briefing, Ms. Kreisler provided her perspective on the law, but still could not direct the court to any evidence, expected evidence, or theory of discovery that would impact the issue of authority. In light of all of this, the court did not err by allowing CCC to assert an additional affirmative defense, even so late in the proceedings. In the end, "the purpose of the federal rules is to provide the maximum opportunity for each claim to be decided on the merits rather than on the basis of procedural factors. The main purpose of the rules would be evaded if we were to hold that the defense was not properly raised." *State Distribs., Inc. v. Glenmore Distilleries Co.*, 738 F.2d 405, 411 (10th Cir. 1984). Because Ms. Kreisler faced no unfair surprise, CCC's technical failure to comply with Rule 8(c) is not fatal in this case.

In a related claim, Ms. Kreisler argues she was entitled to a jury trial on the issue of lack of authority. The core of Ms. Kreisler's argument is that, by denying her motion for a continuance, the court left her unable to assess her right to a jury, thereby effectively denying her the right. Although Ms. Kreisler recognizes that the question of whether agency existed is a question of law for the

court under Kansas law, *see Wheat v. Kinslow*, 316 F. Supp. 2d 944, 954 (D. Kan. 2003), she contends there were a series of underlying factual disputes that should have been decided by a jury.

We cannot agree that by denying Ms. Kreisler's motion for a continuance, the court denied her a jury trial. Rather, Ms. Kreisler waived her right to a jury trial by stipulating that the validity of the severance agreement should be determined by the court. She cannot now claim she only consented to a bench trial with respect to certain challenges to the validity of the release. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A party who has waived a right is not entitled to appellate review. *United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006). In this case, Ms. Kreisler intentionally waived her right to a jury trial with respect to the validity of the severance agreement; thus, we will not review this claim on appeal.

## II.    Evidence of Authority

Next, Ms. Kreisler contends the trial court erred by finding Ms. Flanigan lacked actual or apparent authority to bind CCC to the release. She also claims the court erred by failing to find that CCC ratified the release by its actions.

Rule 52 of the Federal Rules of Civil Procedure governs our review of the

district court's findings and conclusions.[3]  Ms. Kreisler primarily argues that the district court overlooked or mischaracterized certain evidence presented at trial, such that we should overturn the district court's findings.  We review a court's conclusions of law *de novo*.  *Tosco Corp. v. Koch Indus.*, 216 F.3d 886, 892 (10th Cir. 2000).  However, we review Ms. Kreisler's challenges to the district court's findings of fact for clear error, giving due regard to the court's opportunity to judge the credibility of witnesses.  *See* Fed. R. Civ. P. 52(a)(6).  This standard of review is highly deferential:

> If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.  Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

---

[3] CCC initially suggested Ms. Kreisler waived appellate review of this issue by failing to move for judgment as a matter of law as required by Rule 50(a) of the Federal Rules of Civil Procedure.  However, at oral argument, CCC conceded Rule 50 has no bearing in this case because it applies only to jury trials.  *See* Fed. R. Civ. P. 50(a); *see also Schulte v. Potter*, 218 F. App'x 703, 710 n.5 (10th Cir. 2007).  For her part, Ms. Kreisler contends that the parties' stipulation that Ms. Kreisler preserved her right to appeal estops CCC from arguing lack of preservation.  However, while we will honor stipulations to evidentiary facts, "it is well-settled that a court is not bound by stipulations of the parties as to questions of law." *Koch v. U.S. Dep't of Interior*, 47 F.3d 1015, 1018 (10th Cir. 1995) (internal quotation marks omitted).  Whether Ms. Kreisler has a right to appeal is a question of law.  Fortunately for Ms. Kreisler, under Rule 52, a party "may later question the sufficiency of the evidence supporting the findings [made at a bench trial], whether or not the party requested findings, objected to them, moved to amend them, or moved for partial findings." Fed. R. Civ. P. 52(a)(5).  Therefore, Ms. Kreisler's arguments are not waived.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985). Thus, "the question for this court under Rule 52(a) is not whether it would have made the findings the trial court did, but whether on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed." *NLRB v. Viola Indus.-Elevator Div., Inc.*, 979 F.2d 1384, 1387 (10th Cir. 1992) (en banc) (quotation marks and alteration omitted).

In this case, the court did not err in finding Ms. Flanigan lacked actual authority to sign the severance agreement Ms. Kreisler altered. Ms. Kreisler contends that if only Mr. Cutler had authority to bind CCC then, logically, the signature line on the agreement would have had his name and title affixed instead of remaining blank. Ms. Kreisler also points to testimony that CCC had no policing process for the agreements. Finally, Ms. Kreisler argues that the fact that Ms. Flanigan skimmed over the agreement, reading parts of it before signing, reveals her authority. However, this evidence is undercut by Mr. Cutler's and Ms. Flanigan's testimony that Ms. Flanigan only had authority to execute *approved* agreements—the original agreement, in this case. She lacked authority to sign off on any modifications without prior approval from Mr. Cutler. Therefore, the evidence does not establish Mr. Cutler authorized Ms. Flanigan to sign the modified agreement, expressly or otherwise. *See Carver v. Farmers & Bankers Broad. Corp.*, 179 P.2d 195, 202 (Kan. 1947).

Ms. Kreisler's claims of apparent authority similarly fail. "[A]pparent

-14-

authority of an agent to bind the principal rests upon words or conduct of the principal which leads the third party dealing with the agent to *reasonably* believe the agent's authority is sufficient to cover the transaction in question." *Bucher & Willis Consulting Eng'rs, Planners & Architects v. Smith*, 643 P.2d 1156, 1159 (Kan. App. 1982) (emphasis added). The fundamental defect in Ms. Kreisler's claim of apparent authority is her deposition testimony that she well knew the actual limitations on Ms. Flanigan's authority. According to her deposition testimony, Ms. Kreisler knew Mr. Cutler had to approve any modifications to severance agreements. And Ms. Kreisler admitted familiarity with CCC's process for preparing and executing the agreements and acknowledged that she lacked authority to execute modified agreements without Mr. Cutler's personal approval during her employment at CCC. Ms. Kreisler conceded knowing that Ms. Flanigan also lacked that authority. Finally, Ms. Kreisler admitted surprise that Ms. Flanigan signed the modified agreement because she had expected Ms. Flanigan to take the agreement to Mr. Cutler for approval first. Ms. Kreisler cannot have reasonably believed Ms. Flanigan had authority to sign the modified agreement where she admitted actual knowledge of the limits on Ms. Flanigan's authority. Instead, the evidence shows she knew or should have known Ms. Flanigan's signing of the modified agreement fell outside the scope of her authority.

Finally, Ms. Kreisler contends that even if Ms. Flanigan's actions were

unauthorized, CCC ratified her conduct by performing its obligations under the agreement. However, Ms. Kreisler misses a basic point. Under Kansas law, ratification only prevents rescission of a contract where, having "knowledge of the facts entitling him to rescission of the contract," the party ratifies it. *Nordstrom v. Miller*, 605 P.2d 545, 554 (Kan. 1980) (quotation marks and alteration omitted). In this case, as soon as CCC gained knowledge of the facts permitting rescission—Ms. Kreisler's embezzlement and the unauthorized modification of the severance agreement—CCC repudiated the contract, refusing to provide further benefits pursuant to it. Ms. Kreisler points to no evidence showing otherwise. Instead, she argues CCC's later repudiation of the contract does nothing to negate its initial ratification, but she cites to no authority supporting this proposition.

In light of all the evidence presented and the applicable law, the district court did not err in finding that Ms. Flanigan lacked actual or apparent authority to bind CCC to the modified severance agreement and that CCC did not ratify the agreement.

## III. Admission of Deposition Testimony

Next, Ms. Kreisler argues the district court erred by allowing CCC to read portions of her deposition into evidence at the bench trial. Specifically, she claims nothing in the Federal Rules of Civil Procedure or Federal Rules of Evidence allowed for this evidence.

-16-

We review a district court's decision to admit evidence, including witness testimony, for abuse of discretion. *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994). "Under the abuse of discretion standard, the district court will be reversed only if it made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Beck v. N. Natural Gas Co.*, 170 F.3d 1018, 1025 (10th Cir. 1999) (quotation marks omitted). At the bench trial, CCC read portions of Ms. Kreisler's deposition testimony into the record over Ms. Kreisler's Rule 32 objection. After CCC argued the testimony was allowable as an admission of a party-opponent, the court admitted the evidence.

Under Rule 32, a deposition may be used at trial against any party who "was present or represented at the taking of the deposition or had reasonable notice of it" when its use fits into one of three outlined provisions. Fed. R. Civ. P. 32. One provision allows a deposition to be admitted into evidence for the purpose of impeaching the deponent as a witness "or for any other purpose allowed by the Federal Rules of Evidence." *Id.* Ms. Kreisler argues that none of Rule 32's provisions allow the testimony in this case. She also implies that under any provision, CCC had to first establish her unavailability to testify.[4]

CCC is correct is in its contention that it is permissible under Rule

_____

[4] Notably, Ms. Kreisler used Rule 32(a)(6) at the bench trial to introduce portions of her own deposition, after CCC finished reading parts of the deposition into the record.

801(d)(2) of the Federal Rules of Evidence to admit a deposition as a statement of a party-opponent. Moreover, neither Rule 801(d)(2) nor Rule 32(a)(1) require a showing of unavailability for admissions of party-opponents. "Rule 32 allows a party to introduce as a part of his substantive proof, the deposition of his adversary, and it is quite immaterial that the adversary is available to testify at trial or has testified there." *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 773 (10th Cir. 1999) (quotation marks omitted). Accordingly, the court did not abuse its discretion by admitting the deposition as an admission of a party-opponent under Rule 32(a)(1) of the Federal Rules of Civil Procedure and Federal Rule of Evidence 801(d)(2).

## IV.    Denial of Motion to Stay

Last, Ms. Kreisler contends the court erred by denying her motion to stay the civil proceedings until the completion of the parallel criminal proceedings.

We review a district court's decision to grant or deny a motion to stay proceedings for abuse of discretion. *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000); *Mid-America's Process Serv. v. Ellison*, 767 F.2d 684, 687 (10th Cir. 1985). "When applying for a stay, a party must show 'a clear case of hardship or inequity' if 'even a fair possibility' exists that the stay would damage another party." *Ben Ezra*, 206 F.3d at 987 (quoting *Span-Eng Assocs. v. Weidner*, 771 F.2d 464, 468 (10th Cir. 1985)).

The Constitution does not generally require a stay of civil proceedings

pending the outcome of criminal proceedings, absent substantial prejudice to a party's rights. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir. 1995); *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980). When deciding whether the interests of justice seem to require a stay, the court must consider the extent to which a party's Fifth Amendment rights are implicated. *Keating*, 45 F.3d at 324. However, "[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Id.* at 326. A district court may also stay a civil proceeding in deference to a parallel criminal proceeding for other reasons, such as to prevent either party from taking advantage of broader civil discovery rights or to prevent the exposure of the criminal defense strategy to the prosecution. *Dresser*, 628 F.2d at 1375–76. In this case, Ms. Kreisler challenges only the effect of the proceedings on her Fifth Amendment rights.

Our review of this issue is made more difficult by the fact that the record contains only a small portion of the district court's justification for denying the stay. The court denied Ms. Kreisler's first motion for a stay in a docket text order, with no grounds for the denial recited. The court denied Ms. Kreisler's second motion to stay, which it construed as a motion to reconsider, because it did not satisfy any of the criteria for reconsideration. The only record justification for denying the stay appears at the end of the bench trial when the court declined to accept Ms. Kreisler's proffer. Fortunately, even this limited

-19-

recount of the court's basis for denying the motion is sufficient to show the court did not abuse its discretion.

In the first place, the court concluded there was limited overlap between the issues and evidence in the civil and criminal cases. The criminal case focused on whether Ms. Kreisler embezzled money from CCC while the civil bench trial involved only the validity of the mutual release in the severance agreement. It did not involve the other aspects of Ms. Kreisler's alleged criminal conduct, such as the embezzlement. With the civil case so tightly focused, any crossover of evidence was minimal. In fact, the court limited the scope of the bench trial so much, it is better considered "simultaneous" than "parallel" to the criminal case.

Moreover, Ms. Kreisler provides no concrete examples of how the district court's denial of her motion to stay unfairly prejudiced her. She claims only that it prevented her from testifying in the civil case. In reality, by the time Ms. Kreisler moved for a stay, the court had little hope of protecting Ms. Kreisler's right against self-incrimination. Ms. Kreisler filed her first motion for a stay on September 8, 2005, but Ms. Kreisler had been deposed months earlier, on June 3, 2005. At this deposition, Ms. Kreisler testified about the validity of the severance agreement—the only issue at the bench trial—and about Ms. Flanigan's authority. Ms. Kreisler waived her Fifth Amendment privilege with respect to the questions she answered during her deposition. We understand that Ms. Kreisler was uncounseled at the time of her deposition, but this does not change the fact that

-20-

by the time she first moved for a stay, she had already provided the evidence used against her at the bench trial.[5]  A later stay would not have changed this.

In a related claim, Ms. Kreisler argues the court erred by declining her proffer of her testimony.  The stated purpose of the proffer was to preserve the issue of the stay.  However, the court concluded Ms. Kreisler's motion to stay had been properly preserved, without a proffer.

CCC contends we should not review this claim because, under Rule 103 of the Federal Rules of Evidence, Ms. Kreisler is only entitled to make a proffer if the district court excluded some evidence she tendered.  On appeal, for the first time, Ms. Kreisler contends that by denying her motion for a stay, the district court effectively excluded her testimony.  She also argues that Rule 103 does not control her offer of proof, but she fails to explain what does control.

Under the Federal Rules of Evidence, a party may only make an offer of proof if the court has excluded some evidence tendered by the party.  The purpose of Rule 103 "is to allow the trial judge to make an informed evidentiary ruling, and to create an adequate record for appellate review to determine whether exclusion of the evidence was reversible error." *Inselman v. S&J Operating Co.*, 44 F.3d 894, 896 (10th Cir. 1995).  In this case, Ms. Kreisler voluntarily chose

---

[5] Ms. Kreisler next raised the issue after the proceedings were even more advanced.  She filed her motion to reconsider the court's denial of the stay less than two weeks before the bench trial.

not to tender any evidence. We do not find the court excluded her testimony for purposes of Rule 103. Likewise, we reject Ms. Kreisler's argument that we should infer prejudice from the court's denial of her motion to stay because the court's refusal of her proffer deprived her of the ability to establish prejudice. We simply see no grounds for such a finding.

## CONCLUSION

For the above reasons, we **AFFIRM** the judgment of the district court. Additionally, we **GRANT** Ms. Kreisler's motion to file a supplemental appendix.