**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

CAROLYN STAPP,

     Plaintiff - Appellant,

v.

CURRY COUNTY BOARD OF
COUNTY COMMISSIONERS,

     Defendant - Appellee.

No. 16-2067
(D.C. No. 2:15-CV-00356-GBW-CG)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **GORSUCH**, and **MATHESON**, Circuit Judges.
_____

Plaintiff Carolyn Stapp appeals from a district court order granting summary

judgment for defendant Curry County Board of County Commissioners in this action

under the Age Discrimination in Employment Act (ADEA).[1] She challenges the

rejection of her claims for constructive discharge, hostile work environment (HWE),

and retaliation. Reviewing the summary judgment order de novo under the same

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Judgment was entered for the district court by the magistrate judge acting
pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

standard as the district court, *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015), we affirm.

## I. BACKGROUND

To aid in understanding the relevant factual background, we provide an overview of our rationale for resolution of this appeal. As for the HWE and constructive discharge claims, we agree with the district court that the County established (1) it had a reasonable policy to prevent and promptly correct prohibited harassment and (2) Ms. Stapp unreasonably failed to take advantage of the policy, entitling the County to judgment as a matter of law on both claims under the *Ellerth/Faragher* doctrine. *See Pa. State Police v. Suders*, 542 U.S. 129, 137-38, 140-41 (2004) (holding doctrine of *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), which involved HWE claims, also applies to constructive discharge claims based on harassment if there is no official employment action involved).[2] As for the retaliation claim, we agree with the district court that Ms. Stapp could not show the requisite causative link between protected activity and adverse consequences.

---

[2] Alternatively, the district court held the HWE claim failed because Ms. Stapp could not show a workplace permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of her employment and create an abusive environment, *see Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1264 (10th Cir. 1998), and the constructive discharge claim failed because she could not show working conditions so intolerable that a reasonable person would feel she had no choice but to quit, particularly in light of an offer from the County's personnel coordinator to investigate her complaints upon learning of her intent to resign. *See Fischer v. Forestwood Co.*, 525 F.3d 972, 980-81 (10th Cir. 2008); *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 534 (10th Cir. 1998).

With these legal points in mind, we recount the summary of undisputed facts set out by the district court, which Ms. Stapp has not challenged on appeal:[3]

1. Plaintiff Carolyn Stapp began her employment as a Booking Officer at the Curry County Detention Center on January 14, 2011.

2. Plaintiff was a good employee.

3. At all times material, Curry County had a personnel policy in place which prohibited workplace harassment or discrimination, including on the basis of age, and which provided a procedure for raising claims or complaints of age discrimination or harassment.

4. Curry County's personnel policy requires that any complaint of workplace harassment be reported to the Personnel Coordinator. Under the policy, the Personnel Coordinator is the person authorized to receive and act upon any complaints of workplace harassment. All complaints are investigated. If any employee is dissatisfied with the conclusions or results of any investigation or with any corrective measures, the employee may appeal, in writing, to the County Manager.

5. Plaintiff received and acknowledged receipt of Curry County's personnel policy.

6. Plaintiff received general training in workplace discrimination and harassment.

7. At all times material, Carrie Wilhite served as Personnel Coordinator for Curry County. While Plaintiff met with Ms. Wilhite on multiple occasions and complained about working conditions, Plaintiff never reported ageist comments to Ms. Wilhite. In addition, Plaintiff never presented any appeal to the County Manager.

8. At all times material, Rhonda Long was employed as a senior booking officer.

9. At all times material, Cheryl Jouett was employed as a booking officer.

---

[3] Ms. Stapp broadly asserts that material fact disputes preclude summary judgment, but she does not dispute the specific facts recited above (with one groundless exception that we discuss later). Rather, her argument is that the facts create genuine issues regarding her right to relief and to a trial on her claims.

3

10. On January 13, 2012, Plaintiff met with Ms. Wilhite and complained about work conditions and the attitudes of Ms. Long and Ms. Jouett. However, Plaintiff did not report any ageist comments to Ms. Wilhite.

11. Plaintiff claims that ageist comments were made by detention officers every day starting in October 2011.

      i.      A twenty-five year old detention officer named Sotelo nicknamed Plaintiff "old woman."

      ii.      Sotelo teased Plaintiff about her eyeglasses being "coke bottles."

      iii.      Sotelo teased Plaintiff about her dentures falling out.

      iv.      Plaintiff was called a "devil worshipper" by a sergeant in the presence of Ms. Long.

      v.      Several detention officers who were younger than Plaintiff called her "old woman" because she wore dentures and eyeglasses with thick lenses.

      vi.      When Plaintiff would get up from her chair, detention officers would say "be careful you don't fall" or ask if she needed a cane.

12. Plaintiff claims that Ms. Long instigated the comments by telling the detention officers her age.

13. On more than one occasion, Ms. Long told the detention officers to stop making the ageist comments.

14. On February 21, 2012, Plaintiff complained to the Detention Center Administrator, Tori Sandoval, that the working environment with Ms. Long and Ms. Jouett was hostile. However, Plaintiff does not remember reporting any ageist comments to Ms. Sandoval. Ms. Sandoval explained that if Plaintiff felt that she was being harassed, that she should speak to Ms. Wilhite or the human resources department.

15. As a result of this complaint, Ms. Sandoval held a meeting with other booking officers on February 27, 2012 to discuss workplace attitudes, animosity, a hostility in the work environment, overtime, and not being required to work on days when officers were not scheduled.

16. On March 4, 2012, Plaintiff asked Ms. Wilhite for time off work because of Ms. Jouett's alleged hostility. Plaintiff did not state that this hostility was due to age discrimination.

4

17. Plaintiff met with Ms. Wilhite again on March 8, 2012 to complain about the jealousy, mean treatment, and attitudes of Ms. Long and Ms. Jouett. However, Plaintiff did not report ageist comments at this meeting.

18. Plaintiff claims that the last time any alleged ageist remark was made was on March 11, 2012.

19. Plaintiff was out sick from March 12-18, 2012. Plaintiff returned to work on March 19-20, 2012, which was Monday and Tuesday.

20. In her diary of her work at the Detention Center, Plaintiff documented that on March 19-20, 2012, she had problems with Ms. Long and another officer, Sheila Morrison, being distant. Plaintiff cannot describe this with any specificity, but stated that the animosity was high.

21. Plaintiff's regular days off work were Wednesday and Thursday. Consistent with this schedule, Plaintiff was off work on Wednesday and Thursday, March 21-22, 2012.

22. On Thursday March 22, 2012, Plaintiff called in and reported she could not be at work on Friday, March 23, 2012, because she needed to attend to her husband, who was having medical difficulties.

23. On March 23, 2012, Plaintiff spoke on the phone with Ms. Wilhite and complained that Sheila Morrison had recently been hostile toward her. Plaintiff informed Ms. Wilhite that she was being forced to resign and planned to resign on Monday, March 26, 2012.

24. Ms. Wilhite encouraged Plaintiff not to resign, telling Plaintiff that she was a good employee and offering to open an investigation. Ms. Wilhite had offered an investigation in the past, but had never opened an investigation.

25. Plaintiff did not work on March 24-25, 2012, and did not call in sick for either day.

26. Plaintiff tendered her resignation on March 26, 2012 because of the alleged hostile work environment, harassment, animosity, and emotional suffering.

27. Plaintiff never reported the ageist comments to the County Manager.

28. Plaintiff was supposed to receive a raise in pay in January 2012, but did not receive the raise until March 2012.

5

Dist. Ct. Doc. 46 (Summary Judgment Order) at 3-8 (citations omitted). To the extent additional facts are pertinent, they will be considered in connection with particular issues raised by Ms. Stapp.

## II. *ELLERTH/FARAGHER* DEFENSE TO CONSTRUCTIVE DISCHARGE AND HWE CLAIMS BASED ON AGE-DISCRIMIANTORY HARASSMENT

### A. *Preservation of Ellerth/Faragher Defense*

Ms. Stapp contends the County should not have been allowed to rely on the *Ellerth*/*Faragher* defense because the County did not assert it in its answer to the complaint as required by Fed. R. Civ. P. 8(c) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense. . . ."). The district court rejected this contention, and so do we.

"The general rule is that a party waives its right to raise an affirmative defense . . . when the party fails to raise the defense in its pleadings." *Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009). But mindful "that the liberal pleading rules established by the Federal Rules of Civil Procedure apply to the pleading of affirmative defenses," we "must avoid hypertechnicality in pleading requirements and focus, instead, on enforcing the actual purpose of the rule." *Id.* (internal quotation marks omitted). That purpose "is simply to guarantee that the opposing party has notice [of the defense] . . . so that he or she is prepared to properly litigate it." *Id.* (internal quotation marks omitted).

We agree with the district court that the County's answer provided adequate notice of the *Ellerth*/*Faragher* defense. In setting out affirmative defenses, the

6

answer asserted both elements of the *Ellerth*/*Faragher* defense: that the County had exercised reasonable care to address harassment and discrimination and that Ms. Stapp had failed to take advantage of its safeguards against discrimination by neglecting available investigatory and remedial mechanisms, App. at 27. *See Suders*, 542 U.S. at 145-46. And, as the district court observed, Ms. Stapp thereafter sought discovery framed in terms of the elements of the *Ellerth*/*Faragher* defense. *See* App. at 157, 162-64. While the County did not specifically refer to *Ellerth*/*Faragher* in its answer, to insist on citation to authorities or the use of particular labels in pleadings when the concern for notice is satisfied without them would enforce the very hypertechnicality rejected by *Kreisler*. *See also Adams v. Austal, U.S.A., L.L.C.*, 754 F.3d 1240, 1258-59 (11th Cir. 2014) (holding *Ellerth*/*Faragher* defense not waived under Rule 8(c) though case name not used in answer).

### B. *Applicability of Ellerth/Faragher Defense in ADEA Cases*

We also agree with the district court that the *Ellerth*/*Faragher* defense applies in ADEA cases. In *Wright-Simmons v. City of Oklahoma City*, 155 F.3d 1264, 1270 (10th Cir. 1998), we held that although *Ellerth* and *Faragher* involved claims of sexual harassment, "the principles established in those cases apply with equal force to [a] case of racial harassment for a number of reasons." Those reasons were: (1) "a preference for harmonizing the standards applied in cases of racial discrimination and sexual discrimination"; (2) *Ellerth* and *Faragher* "do not involve situations unique to sexual harassment cases, *e.g.*, quid pro quo harassment"; (3) "employer-liability standards are equivalent for race and sex-based discrimination"; and (4) *Ellerth* and

7

*Faragher* "interpreted the same statutory language at issue [in race discrimination cases]: Is an institution an 'employer' for purposes of Title VII?" *Id.* These reasons support application of the *Ellerth*/*Faragher* doctrine in the ADEA context as well.

Harmonization of the statutory standards is particularly evident here—where the recognition of age-based HWE claims was a carryover from the Title VII sexual-harassment context based on the fact "that the ADEA and Title VII share common substantive features and also a common [anti-discriminatory] purpose." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 440 (5th Cir. 2011) (following *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996)). Further, the standard governing employer liability is the same. *See MacKenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1280 (10th Cir. 2005) (applying standard from Title VII sexual harassment case, *Penry*, 155 F.3d at 1261, to HWE claim in ADEA case). *See generally Villescas v. Abraham*, 311 F.3d 1253, 1257 (10th Cir. 2002) ("The substantive anti-discrimination provisions of the [ADEA] are patterned on Title VII . . . ."). And the point made in *Wright-Simmons* about the *Ellerth*/*Faragher* doctrine not deriving from quid pro quo considerations unique to sexual harassment—which might make it inapt for other types of harassment—is equally pertinent here. Finally, aside from the number of employees required, "Title VII defines 'employer' in the same way as the ADEA," *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 361 n.1 (7th Cir. 2016), and hence the definitions "'must be read in the same fashion,'" *Fantini v. Salem State Coll.*, 557 F.3d 22, 29 (1st Cir. 2009) (quoting *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998)).

8

More generally, there is a "developing consensus" that although the *Ellerth/Faragher* defense was first recognized in the context of sexual harassment, it applies "to the full range of harassment claims covered by Title VII." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 186 n.9 (4th Cir. 2001) (collecting cases, including this circuit's decision in *Wright-Simmons*); *see also Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2442 n.3 (2013) (noting "[s]everal federal courts of appeals have held that *Faragher* and *Ellerth* apply to other types of hostile environment claims," and assuming, without deciding, that *Ellerth/Faragher* defense applies to race-based HWE claim); *Williams v. Admin. Review Bd.*, 376 F.3d 471, 478 (5th Cir. 2004) (holding *Ellerth/Faragher* defense applies to whistleblower-harassment claim). And the defense has been applied specifically to claims under the ADEA. *See, e.g.*, *Stofsky v. Pawling Cent. Sch. Dist.*, 635 F. Supp. 2d 272, 295 (S.D.N.Y. 2009); *Oleyar v. Cty. of Durham*, 336 F. Supp. 2d 512, 518 & n.5 (M.D.N.C. 2004); *Lacher v. West*, 147 F. Supp. 2d 538, 543-44 (N.D. Tex. 2001).

Given the analytical guidance from our own precedent in *Wright-Simmons*, and prevailing trends elsewhere, we conclude that the *Ellerth/Faragher* defense applies to HWE claims and constructive discharge claims asserted under the ADEA.[4]

---

[4] In *Pennsylvania v. Suders*, 542 U.S. 129 (2004), the Supreme Court said the *Ellerth/Faragher* defense applies to a claim that a hostile work environment culminated in a constructive discharge unless "a supervisor's official act precipitates the constructive discharge; absent a 'tangible employment action,' however, the defense is available to the employer whose supervisors are charged with harassment." *Id.* at 140-41. We address the absence of a tangible employment action here in the next section.

9

C. *No Tangible Employment Act for HWE and Constructive Discharge Claims*

Ms. Stapp contends the *Ellerth/Faragher* defense is inapplicable because she suffered tangible employment actions. *See generally Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1059 (10th Cir. 2009) (explaining that *Ellerth/Faragher* defense is not available to shield employer from vicarious liability if supervisor's harassment "culminates in a tangible employment act, such as discharge, demotion, or undesirable reassignment" (internal quotation marks omitted)).[5] We disagree.

She refers to an averment in her affidavit describing animosity directed at her on March 20, 2012, when she was spoken to in a rude manner and "was excluded from [her] duties." App. at 114-15. This conclusory statement about a single incident of workplace interference—which does not say what duties were involved, whether the interference was official, or how and for how long the exclusion was effected—is plainly insufficient to create a triable issue of a tangible employment action. A tangible employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Suders*, 542 U.S. at 144 (internal quotation marks omitted). Ms. Stapp's affidavit does not provide a basis for any such finding.

---

[5] We note much of the alleged harassment came from Ms. Stapp's nonsupervisory coworkers, for which the County could not be vicariously liable but only directly liable if certain additional conditions were met. *See Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 650 (10th Cir. 2013). Ms. Stapp does not argue such a claim for direct liability and we therefore do not consider the point.

10

She also refers to the two-month delay in her receipt of the pay raise that should have taken effect in January 2012. But there is no evidence to suggest this omission was anything other than an administrative oversight. Ms. Stapp cites no evidence to suggest any tie between the delay and any particular supervisor, let alone one with an ageist motivation.[6] Nor does she cite any evidence that she brought the omission to the County's attention and was rebuffed. Again, Ms. Stapp has not shown a triable issue of a tangible employment action relating to her HWE and constructive discharge claims that would bar the County's reliance on the *Ellerth/Faragher* defense.

Finally, she now claims for the first time on appeal (in her reply brief) that she was actually fired, citing internal County memoranda referring to her abandonment of her job after three shifts of "No Call No Show" culminating in the day she handed in her resignation. This argument for a tangible employment action is plainly waived, for failure to raise it both in the district court and in her opening brief on appeal— where she consistently claimed she had been constructively discharged as a result of her resignation. *See Planned Parenthood of the Rocky Mountains Servs., Corp. v. Owens*, 287 F.3d 910, 926 n.18 (10th Cir. 2002) (noting argument not raised in district court or in opening appellate brief had been "doubly waived").

---

[6] The record shows only that personnel coordinator Wilhite timely informed the payroll department that Ms. Stapp had completed probation and was entitled to the associated pay increase, approved by the County Manager. *See* App. at 118.

11

D. *County's Establishment of Ellerth/Faragher Defense*

As noted above, the *Ellerth*/*Faragher* defense has two necessary elements: (1) the employer exercised reasonable care to prevent and promptly correct any statutorily prohibited harassment; and (2) the plaintiff unreasonably failed to take advantage of preventive or corrective opportunities provided by the employer. *Debord v. Mercy Health Sys. of Kan., Inc.*, 737 F.3d 642, 653 (10th Cir. 2013). "These two elements are designed to encourage forethought by employers and saving action by objecting employees." *Id.* (brackets and internal quotation marks omitted).

The first element incorporates both preventive and corrective requirements. *Id.* As for prevention, an employer "acts reasonably as a matter of law to prevent harassment if it adopted valid [anti-]harassment policies and distributed those policies to employees via employee handbooks, even if it either provided no [anti-]harassment training or provided training only to managers." *Id.* (brackets added; additional brackets and internal quotation marks omitted). Here, the County had an anti-harassment policy that provided a procedure for reporting and investigating workplace harassment, and Ms. Stapp received a copy of the policy. She does not challenge the validity of this policy. In addition, she admitted at her deposition that she attended a briefing on workplace harassment given by the County Manager and County Attorney, App. at 43, and a workplace harassment seminar, *id.* at 44. We agree with the district court that these facts satisfy the County's burden as to reasonable efforts at prevention. *See Debord*, 737 F.3d at 653-54; *Helm v. Kansas*, 656 F.3d 1277, 1289 (10th Cir. 2011).

12

As for the correction requirement, an employer must "show that it acted reasonably promptly . . . *when it was given proper notice of [the employee's] allegations* as required under its complaint procedures." *Helm*, 656 F.3d at 1290 (emphasis added and internal quotation marks omitted). There is no evidence Ms. Stapp complained of age-based harassment to the person designated by the County's policy to receive and investigate such complaints (personnel coordinator Wilhite). She did complain to Ms. Wilhite about hostility in her department—a matter that Ms. Wilhite offered to investigate when Ms. Stapp indicated her intent to resign—but she has not been able to recall any instance in which she reported to Ms. Wilhite harassment on account of her age. Ms. Stapp contends the district court incorrectly found that she had never reported age discrimination to Ms. Wilhite, citing portions of her affidavit where she recounted two general complaints of workplace hostility she made to Ms. Wilhite. *See* Aplt. Opening Br. at 22. She fails to mention that when asked at her deposition whether her complaints to Ms. Wilhite ever included reports of age-based conduct, she repeatedly admitted she could not recall any. Absent notice, the County cannot be faulted for the lack of a prompt investigation into such harassment.

Turning to the second element of the *Ellerth/Faragher* defense, an employer satisfies its burden "by showing that the victimized employee unreasonably delayed in reporting [or never reported] incidents of [prohibited] harassment." *Helm*, 656 F.3d at 1291. We agree with the district court that Ms. Stapp's failure to report age-based harassment to the person designated in the County policy to receive and

13

investigate such complaints—a failure for which she has provided no reasonable excuse—establishes the second element of the *Ellerth*/*Faragher* defense. *See Ellerth*, 524 U.S. at 765 (directing that "any unreasonable failure to use any complaint procedure provided by the employer . . . will normally suffice to satisfy the employer's burden under the second element of the [*Ellerth*/*Faragher*] defense").

## III. RETALIATION CLAIM

"A prima facie case of retaliation [under the ADEA] requires the plaintiff to show that (1) he or she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action." *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1202 (10th Cir. 2008). The district court held that Ms. Stapp failed to make this showing. After assuming for sake of argument that Ms. Stapp had engaged in protected activity[7] and that the delayed pay raise and at least some of her workplace conditions would qualify as materially adverse for purposes of a prima facie case for retaliation, the district court held there was insufficient evidence to demonstrate a

---

[7] "[T]o qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the ADEA. General complaints . . . will not suffice." *Hinds*, 523 F.3d at 1203 (footnote omitted). The district court noted that "[w]hile [Ms. Stapp] failed to give Ms. Wilhite any indication that the unpleasant conditions were due to her age, [she] did specifically inform [senior booking officer Rhonda] Long that she was offended by ageist remarks." Dist. Ct. Doc. 46 at 19. The district court "presume[d] without deciding" that Ms. Stapp's communication with Ms. Long was protected activity under the ADEA. *Id.* at 19 & n.1. On that basis, the district court proceeded through the remaining steps of the prima facie case analysis.

14

triable issue as to the requisite causal connection between the former and the latter. We agree.

> The district court reasoned as follows:
>
> A causal connection can be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action. However, a causal connection cannot be demonstrated where the timeline of events suggests that the adverse employment action was not caused by the protected activity.
>
> . . .
>
> Plaintiff fails to identify the date in which she spoke to Ms. Long about the offending comments, and as a result she cannot demonstrate which activity occurred before her meeting with Ms. Long and which activity occurred after. Plaintiff offers no evidence that the unpleasant work conditions were caused by her protected activity as opposed to her age or some other reason. In addition, while there is no indication of why the pay raise was not received prior to the pay period of March 4, 2012, Plaintiff has provided no evidence whatsoever that this delay was due to her complaint about age discrimination. With no evidence other than continued unpleasant conditions and a delayed pay raise, Plaintiff has failed to establish retaliation based on her protected activity.

Dist. Ct. Doc. 46 at 20-21 (citations and internal quotation marks omitted).

In her opening brief on appeal, Ms. Stapp focuses her retaliation argument on an alleged rise in hostility following a complaint she made about her coworkers to Detention Center Administrator Tori Sandoval. *See* Aplt. Opening Br. at 25-26. But she could recall objecting only to her coworkers' rudeness and could not recall ever telling Ms. Sandoval about any age-related comments. *See* App. at 49. Thus, as with her complaints to Ms. Wilhite, the complaint to Ms. Sandoval was not protected activity under the ADEA and does not figure into the retaliation analysis. *See supra* note 7.

15

Finally, in her reply brief Ms. Stapp refers to the newly raised contention that the County actually fired her, and insists that her termination reflects retaliation. We do not consider this point here for the same reasons we do not consider it in connection with our analysis of the *Ellerth*/*Faragher* defense.

## IV. **CONCLUSION**

The judgment of the district court is affirmed.

ENTERED FOR THE COURT,


Scott M. Matheson, Jr.
Circuit Judge

16