*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BLAKE MAZUREK, ROBIN SMITH, and
TIMOTHY SMITH,

      Plaintiffs-Appellees/Cross-Appellees,

v

KATHY BERDEN,

      Defendant-Appellee/Cross-Appellant,

and

MAYRA RODRIGUEZ, MESHAWN MADDOCK,
JOHN HAGGARD, CLIFFORD FROST, KENT
VANDERWOOD, MARIAN SHERIDAN, AMY
FACCHINELLO, ROSE ROOK, HANK CHOATE,
JAMES RENNER, STANLEY GROT, TIMOTHY
KING, MICHELE LUNDGREN, and KEN
THOMPSON,

      Defendants-Appellees,

and

MARI-ANN HENRY,

      Defendant-Appellant.

UNPUBLISHED
January 17, 2025
10:07 AM

No. 368963
Kent Circuit Court
LC No. 23-000306-CZ

Before: PATEL, P.J., and MURRAY and YATES, JJ.

PER CURIAM.

-1-

Defendant Mari-Ann Henry brings this interlocutory appeal[1] regarding the trial court's order denying defendant Marian Sheridan's motion to stay discovery pending the resolution of the criminal charges against defendants arising out of their conduct during the 2020 presidential election; defendant Kathy Berden cross-appeals. Henry and Berden assert that the trial court erred because the discovery process would force defendants to decide to either waive their Fifth Amendment privilege against self-incrimination, US Const, Am V—potentially exposing them to consequences in their criminal cases—or assert their privilege against self-incrimination only to be subjected to an adverse inference in this civil proceeding. For the reasons that follow, we affirm.

## I. FACTS AND PROCEEDINGS

Plaintiffs were nominated by the Michigan Democratic Party to serve as 3 of the 16 Democratic electors to vote in the Electoral College in anticipation of President Joseph Biden winning the 2020 presidential election. All defendants—except Ken Thompson and James Renner—were similarly nominated by the Michigan Republican Party to serve as the Republican electors in the Electoral College in anticipation of former President Donald Trump winning the 2020 presidential election.[2] Following President Biden winning the Michigan popular vote in the 2020 presidential election, Governor Whitmer issued the Amended Certificate of Ascertainment of the Electors of the President and Vice President of the United States of America, and the Democratic slate of electors then convened in the State Capitol on December 14, 2020, and cast their 16 electoral votes for President Biden, which were transmitted to the President of the United States Senate and the Archivist of the United States for the purposes of certifying the presidential election on January 6, 2021.

Nonetheless, in a purported certification of the Michigan electors, defendants, in their capacity as the Republican electors, issued their competing Certificate of the Votes of the 2020 Electors from Michigan, also dated December 14, 2020, asserting that former President Trump had actually won the Michigan popular vote. This competing certification was sent to the President of the Senate and the Archivist.

Two years after the 2020 presidential election was certified, in January 2023, plaintiffs filed their complaint asserting that defendants' elector certification was coordinated as a purported justification for the President of the Senate to refuse to recognize the true electoral certification from Michigan when certifying the 2020 presidential election. Plaintiffs claimed that, because defendants falsely portrayed themselves as the real electors, it implied that plaintiffs were illegitimate, and, as a result, plaintiffs suffered humiliation, mental anguish, and stress by being cast in the false light created by defendants. Plaintiffs sought declaratory judgment that they were the legitimate electors for Michigan in the 2020 presidential election and that defendants' conduct

---

[1] *Mazurek v Berden*, unpublished order of the Court of Appeals, entered January 4, 2024 (Docket No. 368963).

[2] Defendants Thompson and Renner later substituted for Terri Lynn Land and Gerald Wall, who were originally nominated as Republican electors.

violated Michigan law. Plaintiffs also asserted claims of false light, statutory conversion, and civil conspiracy.

In July 2023, each of these defendants were also charged criminally with the following charges arising out of this same incident: (1) conspiracy to commit forgery, MCL 750.157a and MCL 750.248; (2) forgery, MCL 750.248; (3) conspiracy to commit uttering and publishing, MCL 750.249 and MCL 750.157a; (4) uttering and publishing, MCL 750.249; (5) conspiracy to commit election law forgery, MCL 168.933a and MCL 750.157a; and (6) election law forgery, MCL 168.933a.

Soon after, Sheridan moved to stay discovery, asserting that this matter should be stayed pending the conclusion of the criminal proceedings because both matters involved the same conduct of defendants and staying the proceedings would preserve defendants' privilege against self-incrimination.

The trial court conducted a hearing in November 2023, during which it stated that the available trial date for this matter would be sometime in June 2025; the trial court expressed an inclination to deny the motion to ensure placement on the court's trial schedule, keeping in mind that the criminal case would likely be completed by the time this civil case went to trial. The trial court stated that it was open to revisiting the issue, should the criminal matter be prolonged. At a scheduling conference later that month, the trial court reiterated its inclination to issue a scheduling order, then entertain requests from the parties to extend certain portions of that order as issues arose, stating that it would be a long time before a jury trial in this matter would occur and that allowing the case to progress would ensure proper steps are taken in the meantime. Sheridan reiterated concerns regarding the privilege against self-incrimination, and the trial court stated that it did not "want to be held hostage in this case by the criminal case." The trial court thereafter denied Sheridan's motion for the reasons stated on the record.

## II. STANDARD OF REVIEW

"A trial court's denial of a motion to stay is reviewed for an abuse of discretion," and a "trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Mathis v Auto Owners Ins*, 339 Mich App 471, 480; 983 NW2d 447 (2021). Reversal of a trial court's refusal to grant a stay will occur only when "denial of the motion is an abuse of discretion and the moving party is prejudiced so that he is denied a fair trial." *People v Bailey*, 169 Mich App 492, 499; 426 NW2d 755 (1988).

We first note that Sheridan brought the motion to stay discovery in the trial court, yet it is Henry and Berden who bring this appeal. Although Henry and Berden have standing to bring their arguments before this Court as aggrieved parties, see *Mathew R Abel, PC v Grossman Investments Co*, 302 Mich App 232, 240; 838 NW2d 204 (2013), their arguments are not preserved for appellate purposes and, therefore, are subject to the raise or waive rule, see *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; ___ NW3d ___ (2023). Nevertheless, "this Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421

(2006).  We elect to overlook the lack of preservation and consider the issue because the facts necessary for its resolution have been presented, one of the parties raised the issue, and it was decided by the trial court.

## III.  ANALYSIS

Henry asserts that the discovery process in this civil proceeding either jeopardizes defendants' Fifth Amendment protections in the criminal proceedings, or prejudices defendants' interests in this civil proceeding by allowing an adverse inference against defendants who assert their Fifth Amendment privileges.  Therefore, Henry and Berden argue, the trial court abused its discretion by denying Sheridan's motion to stay.

Regarding the Fifth Amendment's protection against self-incrimination:

> The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  This prohibition not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.  However, as the Fifth Amendment privilege speaks only of compulsion, it is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion.  It does not preclude a witness from testifying voluntarily in matters which may incriminate him. [*People v Wyngaard*, 462 Mich 659, 671-672; 614 NW2d 143 (2000) (quotation marks and citations omitted).]

See also *In re Sternberg*, 384 Mich 588, 592; 185 NW2d 395 (1971).  A witness may invoke the Fifth Amendment "in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory."  *Paramount Pictures Corp v Miskinis*, 418 Mich 708, 734 n 5; 344 NW2d 788 (1984) (LEVIN, J., concurring), quoting *Kastigar v United States*, 406 US 441, 444; 92 S Ct 1653; 32 L Ed 2d 212 (1972) (quotation marks omitted).  This means that the Fifth Amendment privilege applies in civil discovery proceedings.  *Id*.

If a party or witness does invoke the Fifth Amendment during a civil proceeding, the evidence that goes unanswered is subject to an adverse inference.  As this Court has summarized:

> [T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the amendment does not preclude the inference where the privilege is claimed by a party to a civil cause. [*Phillips v Deihm*, 213 Mich App 389, 400; 541 NW2d 566 (1995).]

Indeed, the "invocation of the Fifth Amendment privilege against compulsory self-incrimination gives rise to a *legitimate* inference" of criminal activity in a civil proceeding.  *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 511; 892 NW2d 467 (2016) (emphasis added).

Because of the foregoing law, "[t]he Constitution does not generally require a stay of civil proceedings pending the outcome of criminal proceedings, absent substantial prejudice to a party's rights." *Creative Consumer Concepts, Inc v Kreisler*, 563 F3d 1070, 1080 (CA 10, 2009), citing *Keating v Office of Thrift Supervision*, 45 F3d 322, 324 (CA 9, 1995), and *SEC v Dresser Indus, Inc*, 202 US App DC 345, 352 (1980). Although " '[a] defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege,' " *Keating*, 45 F3d at 326, a court may still "stay a civil proceeding in deference to a parallel criminal proceeding for other reasons, such as to prevent either party from taking advantage of broader civil discovery rights or to prevent the exposure of the criminal defense strategy to the prosecution." *Creative Consumer Concepts, Inc*, 563 F3d at 1080-1081.

Here, the trial court exercised its broad discretion in denying the request for a stay. In doing so, the court highlighted the fact that the criminal case would be concluded prior to the start of the civil trial, presumably allowing the parties the chance to engage in some discovery *after* the criminal matter is resolved, when the Fifth Amendment implications will be lessened or eliminated. Additionally, the court acknowledged that it could revisit the issue if needed, and it would certainly be obligated to resolve any issues raised by the parties if defendants raise the privilege on a case-by-case basis. Although we see the merit in entering a stay to ensure protection of defendants' constitutional rights while the criminal matter is proceeding, given the consideration articulated by the trial court, we cannot say it was an abuse of discretion to deny the motion to stay at this time.[3]

Affirmed.

/s/ Sima G. Patel
/s/ Christopher M. Murray
/s/ Christopher P. Yates

---

[3] We note that at least one defendant has pending a motion for summary disposition based on plaintiffs' pleadings. Because the purpose of a motion for summary disposition under MCR 2.116(C)(8) is to test the legal sufficiency of a complaint, *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999), the trial court should resolve any pending summary disposition motion before discovery recommences.